Matter of the Application of HENRY D. QUINBY, Individually and as Comptroller of the City of Rochester, and the CITY OF ROCHESTER for a Writ of Prohibition *v.* THE PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK FOR THE SECOND DISTRICT and the NEW YORK STATE RAILWAYS.

(Supreme Court, Rensselaer Special Term, January, 1918.)

Prohibition — application for writ of, when denied — contracts — public service commission — statutes — city of Rochester.

   Upon the hearing of an application by the city of Rochester for a writ of prohibition to prevent the defendant railway company from applying to the public service commission for permission to increase its rate of fare and to prevent the commission from hearing the application, it appeared that the city, by a contract with one of defendant's predecessors more than twenty years before, had agreed never to charge more than a five-cent fare for one continuous ride on its road.  *Held,* that as said contract had been judicially determined invalid in the "North Shore" case (175 App. Div. 869) a contention that the public service commission was without jurisdiction on the ground that said contract was valid and binding was untenable and the application for the writ will be denied.

   The provision of section 173 of the Railroad Law that: "Nothing herein contained shall be construed as  *  *  * modifying or affecting the terms of" the contract in question is nothing more than a legislative declaration that said contract was not interfered with and cannot be construed as a ratification thereof, particularly as by section 181 of the Railroad Law the legislature reserved to itself and to the public service commission the right to change the rate of fare on any railroad including that of defendant.

Supreme Court, January, 1918.    [Vol. 102.

It cannot be assumed that by the special statute (Laws of 1915, chap. 359), by virtue of which certain territory was annexed to the city of Rochester, the legislature intended to repeal the general law which reserves to it and to the public service commission the right to regulate fares.

Application for a writ of prohibition.

Benjamin B. Cunningham, corporation counsel, for relator.

Ledyard P. Hale, for public service commission, second district.

Kernan & Kernan (Warnick J. Kernan and Daniel M. Beach, of counsel), for New York State Railways.

Howard, J.  The city of Rochester, by a writ of prohibition, seeks to prevent the defendant New York State Railways from applying to the public service commission for permission to increase its rate of fare, and prevent the public service commission from hearing the application.

It may be assumed that this court is fully empowered to issue this writ if there is danger that the public service commission will attempt to usurp jurisdiction with which it is not vested.  Is there any such danger?  Let us see.

On February 25, 1890, one of the predecessors of this defendant railroad entered into a contract with the city of Rochester whereby it agreed never to charge more than a five-cent fare for one continuous ride on its road.  If this contract is forever binding upon the railroad, and the public service commission is not authorized by the law to grant relief, then the commission has no jurisdiction and it would be idle for the railroad to go to the public service commission, and unlawful for the commission to receive them, and this writ should issue.

The corporation counsel contends that the public service commission is without jurisdiction for three reasons. *First,* because the contract of February 25, 1890, was and is valid and binding; *second,* because the legislature has itself expressly confirmed and ratified the contract; *third,* because the legislature has by a special statute absolutely and definitely fixed the rate of fare, thus ousting the public service commission from jurisdiction to do so. I think that neither of these contentions is sound.

As to the validity of the contract that question has been definitely settled in the negative by the Appellate Division of this department in what is known as the " North Shore case." *People ex rel. N. Y. & N. S. T. Co.* v. *Public Service Com.,* 175 App. Div. 869. I was on the bench of the Appellate Division at that time and I dissented from the majority view of the court but the decision was rendered, notwithstanding my dissent, and became binding, not only upon the public generally, but also upon me as a judge. And it is my opinion that the reasoning of Mr. Justice Lyon was sound, but I was influenced then, as I think the court should have been, by the voice of the Court of Appeals, spoken four years before. *Public Service Com.* v. *Westchester St. R. R. Co.,* 206 N. Y. 209. Judge Hiscock in that case said: " When the village granted appellant's predecessor an extension of its franchise it had the right as a consideration therefor to exact suitable conditions and agreements from the company in the interest of its inhabitants. There is no doubt that the rate of fare to be charged to and from points in the village was a matter of such municipal and public interest that the municipal authorities might bargain with reference thereto. Therefore the grant of the new franchise on the condition and consideration, amongst others, of a five-cent fare between the points

now involved and the acceptance by the company thereof and its agreement to observe all the ' conditions, regulations and restrictions ' thereof made a valid contract.''

This language seems to be wholly at variance with opinion in the *North Shore Case, supra.* But in the latter case the exact question presented here was decided. No appeal has ever been taken and it stands as the law of the state and must be observed.

To support the contention that the legislature has subsequently confirmed and ratified the contract, section 173 of the Railroad Law is invoked. This is the language: '' Nothing herein contained shall be construed as * * * modifying or affecting the terms of a certain contract bearing date the 25th day of February, 1890, entered into by and between the city of Rochester and the street surface railroad corporation therein named * * *.''

But this cannot be construed into a ratification of the contract. It is nothing more than a declaration by the legislature that it has not interfered with the contract. The legislature did nothing to the contract, so it declared; it neither ratified nor repudiated. It made no change whatever. But it clearly indicated by the very expression used that it could have modified or nullified the contract had it chosen to do so. And later on in the same article of the same statute (§ 181) the legislature expressly reserved to itself, and to the public service commission, the right to change the rate of fare on any railroad, including this one, thus reserving the right to abrogate the contract, and thus indicating that it had no purpose, when it enacted section 173, of effecting an irrevocable ratification of the contract.

The third contention grows out of chapter 359 of the Laws of 1915. This was a special act annexing

certain territory to the city of Rochester. In that law the rate of fare within the limits of the city of Rochester was fixed at five cents. But from that fact it cannot be assumed that this special law was intended to repeal the general law which reserves to the legislature, and to the public service commission, the right to regulate fares. Repeal by implication is never favored; and, surely, unless the intention is strikingly plain, repeal by implication of a general law by a special law cannot be tolerated.

It follows that the application for the writ of prohibition should be denied.

Application denied.