[No. 1986]

## THE STATE OF NEVADA, EX REL. H. R. MIGHELS, PETITIONER, *v.* J. EGGERS, STATE CONTROLLER, RESPONDENT.

1. MANDAMUS—PURPOSE OF WRIT—ENFORCEMENT OF OFFICIAL DUTY.
   Performance of a duty, enjoined upon an officer by law without leaving him any discretion in its performance, may be compelled by *mandamus*, if there be no other adequate remedy.

2. MANDAMUS—PURPOSE OF WRIT.
   If a claim against the state for services authorized by law is presented, the amount of which has been fixed by law and an appropriation made therefor, the claim may be enforced by *mandamus*.

3. MANDAMUS—DEFENSES—ADEQUATE LEGAL REMEDY.
   *Mandamus* will not issue when the ordinary legal remedies will give adequate relief.

4. STATES—OFFICERS—COMPENSATION—SECRETARY INDUSTRIAL AND PUBLICITY COMMISSION.
   The act of March 29, 1907 (Stats. 1907, c. 185), sec. 3, provides that the chairman of the State Industrial and Publicity Commission shall receive, as compensation for his services, to be paid out of the state treasury, the sum stated, and the other two members shall serve without compensation. Section 4 provides that the commission may appoint a secretary "at a salary of not more than $1,800 per annum, and may employ such other experts as may be necessary to perform any service that may be required of them, and shall fix their compensation payable out of such contributions" as may be made by the various counties and private individuals. Section 6 permits the commission to solicit private contributions, but prohibits them from receiving money in payment for specific services. Section 8 permits the various counties to allow a certain sum to the commission. Section 9 requires the expenditures for necessary office supplies, etc., to be audited and paid for as other state expenses are paid for, and section 10 requires the commission to report every six months a detailed statement of all sums received, showing from what source received, and for what purpose expended. *Held,* that

Opinion of the Court—Talbot, C. J.

the salary of a secretary of the commission, appointed at a fixed salary, was payable only out of the contributions received, and not from the state treasury, so that the state controller could not be compelled to draw warrants for such salary.

5. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT.
   The legislative intent in enacting a statute must govern if ascertainable.

6. STATUTES—CONSTRUCTION—CONSTRUING AS WHOLE.
   The whole act should be ·construed together to remove or explain any ambiguity in a particular statute.

7. STATES—FISCAL MANAGEMENT.
   Before the state controller is bound to draw a warrant for official salaries, it must appear by statute that an appropriation has been made, and that the state has obligated itself to pay such salaries from the state treasury.

8. CONSTITUTIONAL LAW—JUDICIAL FUNCTIONS—CONSTRUCTION OF STATUTE.
   The court has no legislative power, and cannot put into a statute a provision omitted by the legislature.

9. MANDAMUS—PROOF OF RIGHT.
   *Mandamus* will issue only where the right to be protected is clear.

ORIGINAL PROCEEDING in *mandamus* by H. R. Mighels, as Secretary of the Nevada Industrial and Publicity Commission, to compel the State Controller to draw his warrant in favor of the petitioner for the amount of his salary as such secretary.    **Writ denied.**

The facts sufficiently appear in the opinion.

*James D. Finch* and *George Springmeyer*, for Petitioner.

*Geo. B. Thatcher*, Attorney-General, for Respondent.

By. the Court, TALBOT, C. J. :

The relator asks for a peremptory writ of mandate, requiring the state controller to draw his warrants for $6,900, alleged to be due and unpaid as salary of the relator as secretary of the State Industrial and Publicity Commission from August 1, 1907, to the 1st day of June, 1911, when the act of March 29, 1907 (Stats. 1907, c. 185), creating that commission, became repealed by an act of the legislature of March 17, 1911 (Stats. 1911, c. 74). It is not shown that during this period of nearly four years he took any action to enforce the payment of his salary.

Section 4, under which the relator seeks to recover such salary from the state, is as follows: "Said commission may appoint a secretary at a salary of not more than $1,800 per annum, and may employ such other experts as may be necessary to perform any services it may require of them, and shall fix their compensation, payable out of such contributions as may be made by the various counties and by private individuals."

Under the amended demurrer it is contended on behalf of respondent, by brief and argument, that this court has no jurisdiction of the subject-matter, that the petitioner has not alleged that there is any appropriation for the payment of the salary, nor that the claim was ever presented to the board of examiners, that the petitioner's salary was not fixed by law, and consequently that *mandamus* is not the proper remedy. It is not alleged or claimed that the respondent has in his possession any contributions from counties or private individuals, and the questions arise whether relator's salary is fixed by law, and whether it is made payable as an appropriation out of the state treasury.

Section 21 of article 5 of the constitution provides that the governor, the secretary of state, and the attorney-general shall constitute a board of examiners to allow claims against the state, except salaries and compensation of officers fixed by law.

Section 5653, Revised Laws, provides: "An officer or person who has presented a claim against the state for services or advances authorized by law, and for which an appropriation has been made, but of which the amount has not been fixed by law, to the board of examiners, which claim said board or the state controller has refused to audit and allow, in whole or in part, may commence an action in any court in Ormsby County having jurisdiction of the amount, for the recovery of such portion of the claim as shall have been rejected."

Section 5655 provides: "Upon the presentation of a certified copy of a final judgment in favor of the claimant in any such action, the controller shall draw his

warrant in favor of the claimant for the amount awarded by the judgment."

**1, 2.** Where the law especially enjoins a duty upon an officer, and leaves him no discretion, and there is no other adequate remedy, performance may be enforced by *mandamus*. (*Mau* v. *Liddle*, 15 Nev. 271.) In cases where an officer or person has presented his claim against the state for services authorized by law, the amount of which has been fixed by law, and for which an appropriation has been made, the remedy by *mandamus* may be available. If the legislature fixed the salary of relator, and made it payable out of the state treasury, such salary became a settled demand against the state, which could not be changed by the board of examiners, and which did not require their action prior to payment.

**3.** If relator's claim be regarded as one not fixed by law, he has a remedy after rejection by the board, or by the state controller after action by the board, by civil suit in the district court in Ormsby County, under the foregoing sections 5653 and 5655 of the Revised Laws, and therefore would not be entitled to the writ of mandate, because he would have another adequate remedy, as determined by this court today in *State, ex rel. Abel,* v. *Eggers*, 36 Nev. 372, and in other cases: *State, ex rel. Gleeson,* v. *Jumbo Ex. M. Co.*, 30 Nev. 192, 133 Am. St. Rep. 715, 16 Ann. Cas. 896; *Mayberry* v. *Bowker*, 14 Nev. 340; *State* v. *Langan*, 29 Nev. 459.

As held in *State* v. *James*, 22 Nev. 263: "The writ of *mandamus* will not issue when ordinary remedies afford adequate relief." (*State* v. *Guerrero*, 12 Nev. 105; *State* v. *Boerlin*, 30 Nev. 473.)

**4.** We understand that this principle of law is conceded by the relator, and that he is proceeding on the theory that his salary was fixed by law, and that an appropriation has been made for its payment from the state treasury, which authorizes the drawing of a warrant by the state controller, and that otherwise he would not ask for a writ of mandate.

It will be observed that the language of section 4 of

the act, under which relator alleges he was appointed secretary, and under which he seeks to recover salary, stating that "said commission may appoint a secretary at a salary of not more than $1,800 per annum," although naming the maximum, does not fix the amount of the salary. If the legislature had specified $1,800 per annum as the salary, and had directed its payment out of the state treasury, under the constitution and statutes the claim would not have to be presented to the board of examiners. The act having left it optional with the commission to appoint a secretary at not more than $1,800 per annum, the commission could have fixed the salary at $1,200 per annum, or any other amount not exceeding $1,800 per annum; and consequently it may be argued that the salary was not fixed by law, and that approval or action by the board of examiners is required, and therefore that *mandamus* will not lie to compel the state controller to draw his warrant when the claim has not been acted upon by the board, nor if acted upon by the board, because as indicated the statute provides a different remedy by action in the court in Ormsby County.

For the relator it is contended that, as the legislature authorized the commission to appoint a secretary at a salary of not more than $1,800 per annum, and thereby named the maximum and authorized the commission to fix the salary, the legislature could delegate this power to the commission, and that the salary became fixed by law when it was fixed by the commission. It may be conceded that the legislature could authorize the commission to fix the salary, and still be claimed that, although it was fixed by a commission authorized by law to fix it, nevertheless it was not fixed by law or act of the legislature, but only by a commission whose act in fixing it did not amount to a law. It is unnecessary for us to determine this phase of the case, owing to the conclusion we reach regarding the other contention—that the salary is made payable out of the state treasury. If the last two commas in section 4 as quoted had been omitted, possibly the payment out of the contributions

would have been limited to the compensation of experts employed by the commission. If we ignore the rule sometimes applied, which under that section as punctuated with commas would carry the payment out of contributions back to any payments previously contemplated by the sentence, instead of holding that the language and punctuation make the salary payable out of the contributions, there would still be no provision for the payment of the salary of the secretary out of the state treasury. Consequently, if the language used directs the payment of his salary from any fund or source, it is from the contributions, for the section nowhere provides that his salary shall be paid from the state treasury.

5, 6. The intention of the legislature in passing this law, as in the construction of statutes generally, must govern if ascertainable. If one clause of a statute is obscure, the whole act or different parts are to be examined together in order to remove or explain the ambiguity. (*Ex Parte Prosole*, 32 Nev. 378; *Maynard* v. *Johnson*, 2 Nev. 25.)

The preceding section 3 of the act provided that: "The chairman of such commission shall receive, as compensation for his services, to be paid out of the treasury of the State of Nevada, the sum of twenty-five hundred dollars per annum, payable in equal monthly installments, upon the first day of each and every month, and the other two members shall serve without compensation." We held that this language constituted an appropriation which authorized the payment of the salary of the chairman out of the general fund of the state treasury. (*State, ex rel. Davis*, v. *Eggers*, 29 Nev. 469, 16 L. R. A. n.s. 630.)

Section 6 of the act provided that "the commission shall have the right to solicit and receive private contributions, but shall accept no money or other consideration from any firm or individual in payment of specific services or favors to be rendered."

Section 8 of the act was as follows: "There may be allowed to such commission by the commissioners of the several counties, if in their judgment they deem it advisable, a sum not exceeding the amount of two hundred

and fifty dollars per year, from each and every county in the State of Nevada; and the boards of county commissioners of the various counties of this state are hereby authorized and empowered to provide by appropriate methods of taxation sufficient funds to defray the amounts contributed by their respective counties, and the county auditors of the various counties of this state are directed to, and shall, within thirty days after being directed thereto by the board of county commissioners of their respective counties, draw and transmit to such commission the proper warrant or warrants to pay the sum contributed by their respective counties, such sums to be used by the said commission for the purpose for which the commission is established and for the best interests of the various counties and the State of Nevada, under the direction of the chairman and at least one other member of the commission."

Section 9 provided that expenses for "necessary office furniture, supplies, stationery, books, periodicals, maps, * * * shall be audited and paid as other state expenses are audited and paid."

Section 10 provided that "such commission shall, at least once in every six months, fully report to the advisory committee a full and detailed statement of all sums received and disbursed by the commission during the preceding six months, showing in detail from what source received, and for what purposes disbursements were made."

As the act makes direct provision that the salary of the chairman and the cost of furniture and office supplies shall be paid out of the state treasury, and nowhere provides that the salary of the secretary of the commission should be paid by the state, and does not provide for the use of these contributions otherwise than in paying the salary of the secretary and the compensation of other experts, or the compensation of the experts alone, we cannot say that it was not the intention of the legislature that the salary of the secretary and the compensation of "other experts" should be paid from contributions

authorized ·· to · be ·received ·from· individuals and · the several counties. ·

·At·the time· the general appropriation ·bill, approved March 22, 1907, was passed by the legislature the act of March 29, 1907; creating the State Industrial ·and Pub-. licity· Commission; had not ·been ·approved, ·and conse- quently it· could ·not· be ·inferred ·that ·the· failure of the legislature to make· any provision in ·the general appro- priation bill that year regarding this commission·indicated any intention that the· salary of the secretary or chairman should or should not be ·paid out of· the state· treasury. Both· bills· were passed during the closing hours of the session. ·Although the law could not be· amended by reference or omission in any appropriation bill; the fact that at· the· next· regular session the general·· appropria- tion bill provided for the payment of the salary of the chairman of the commission, and omitted to make any provision for the secretary of the commission, indicates that ·the legislature. construed the .act ,as providing· for the payment of,.the· salary· of· the ·chairman ·out of; the state treasury, and not·for,such·payment of the salary of the secretary. The·constitution provides that·"no money shall be drawn from the treasury·.but in·consequence of an appropriation made· by law." (Rev. Laws, 277; *State, ex rel. Davis*, v. *Eggers*, 29 Nev. 469, 16 L. R. A. n.s. 630.)

7. In order to recover upon an obligation against the state· or· an individual, it is incumbent upon the party seeking relief to show that an obligation exists. Certainly more than the creation of a doubt as to whether the sal- ary of the relator was payable out.of the state treasury or out .of contributions is necessary, and it must appear by some provision of law that an appropriation has been made, and that the state·has obligated .herself to pay this salary· from ·the state ·treasury before ·it· becomes the duty of· the controller to draw a warrant. ·· ··

8. As the act ·nowhere provides that this salary shall be paid by the state, we are unable to .see. how any recovery·may be had against the treasury. ··If any moral obligation rests upon the state, when it is not shown that

any legal liability was created by statute, relief can only be obtained through the legislature. The function of the court is to determine the intention of the law-making branch of the government from the language used, in accordance with the rules of construction. The court has no legislative power, and cannot read into the statute a provision that the salary of the relator shall be paid out of the state treasury, as the salaries of state officers are generally paid. (*Ex Parte Pittman*, 31 Nev. 43, 22 L. R. A. n.s. 266, 20 Ann. Cas. 1319.)

**9.** As heretofore held, the court will grant the writ of mandate only when the right sought to be protected is clear and undoubted. (*State* v. *Stoddard*, 25 Nev. 452, 51 L. R. A. 229.)

The demurrer is sustained, and the application for the writ is denied.