[No. 2158]

STATE OF NEVADA, Ex Rel. NEVADA TAX COMMISSION, RELATOR, v. HENRY BOERLIN, ET AL., AS COUNTY COMMISSIONERS OF ESMERALDA COUNTY, RESPONDENTS.

[144 Pac. 738]

1. TAXATION—LEVY—STATUTES—POWER OF TAX COMMISSION.

Stats. 1913, c. 134, creating the Nevada Tax Commission, and empowering it to exercise general supervision and control over the entire revenue system of the state, with special enumerated powers, including the power to advise and direct assessors, sheriffs, and county boards of equalization, and also providing that the enumeration of the special powers shall not exclude the commissioners of any needful and proper power, does not empower the commission to order a board of county commissioners to reduce its rate of county taxation after the commission has increased the valuation.

2. STATUTES—CONSTRUCTION—INTENTION OF LEGISLATURE.

The intention of the legislature, when not in conflict with the constitution, is to govern in the construction of statutes.

3. STATUTES—IMPLIED REPEAL—SPECIAL STATUTE.

In the absence of a clear showing, the repeal or modification of a statute is not presumed, and, when there is a general and special statutory provision relating to the same subject, the special provision will control.

4. CONSTITUTIONAL LAW—DETERMINATION OF CONSTITUTIONAL QUESTIONS—NECESSITY.

The court does not determine constitutional questions, when such determination is not necessary for the decision of the case.

ORIGINAL PROCEEDING. Petition for *mandamus* by the State of Nevada, upon the relation of J. F. Shaughnessy and others, constituting the Nevada Tax Commission, against Henry Boerlin and others, as the Board of County Commissioners of Esmeralda County. **Petition denied.**

*Geo. B. Thatcher*, Attorney-General, for Petitioners.

*M. A. Diskin*, District Attorney, for Respondents.

By the Court, TALBOT, C. J.:

This is an application by petitioners, as Nevada Tax Commission, for a writ of *mandamus* commanding respondents, Boerlin, Cable, and O'Keefe, as county commissioners, to reduce the tax rate of Esmeralda County from $1.55 to $1.16 on each $100 of assessed valuation, as ordered by petitioners, and commanding the respondent Johnson, as county auditor, to extend the taxes upon the roll of that county accordingly.

[1] The Nevada Tax Commission was created under an act of the last legislature (Stats. 1913, p. 175), which provides that it shall be composed of the first associate commissioner of the state railroad commission and two other persons to be appointed by the governor, with the consent and advice of the senate. Regarding the powers of the commission the act provides:

"SEC. 4. Said Nevada Tax Commission, hereinafter and heretofore referred to as 'said commission,' is hereby empowered to exercise general supervision and control over the entire revenue system of the state; and in pursuance whereof shall possess the following special powers:

"First: To confer with, advise and direct assessors, sheriffs (as ex officio collectors of licenses), and county boards of equalization, as to their duties, and to direct what proceedings, actions or prosecutions shall be instituted to support the law. And in pursuance whereof said commission may call upon the district attorney of any county, or the attorney-general, to institute and conduct such civil or criminal proceedings as may be demanded;

"Second: To have original power of appraisement and assessment of all property mentioned in section 5 of this act;

"Third: To have final powers (other than the courts) to equalize property valuations as provided in sections 6 of this act;

"Fourth: To establish and prescribe general and uniform rules and regulations governing the assessment of property by the assessors of the various counties, not in conflict with law; to prescribe the form and manner in which assessment rolls or tax lists shall be kept by assessors

(and county commissioners shall supply books for the use of assessors in such form), and also to prescribe the form of the statements of property owners in making returns of their property; and it is hereby made the duty of all county assessors to adopt and put in practice such rules and regulations and to use and adopt such form and manner of keeping such assessment rolls or tax lists, and to use and require such property owners to use the blank statements required by said commission in making their property returns;

"Fifth: To require assessors, sheriffs (as ex officio collectors of licenses) and the clerks of county boards of equalization to furnish such information in relation to assessments, licenses or the equalization of property valuations as said commission may demand."

(The sixth, seventh, and eighth subdivisions of the section relate to obtaining testimony, making investigations regarding property, and enforcing any direct or collateral inheritance law.)

"The enumeration of the said foregoing eight special powers shall not be construed as excluding the exercise of any needful and proper power and authority of said commission, in the exercise of its general supervision and control over the entire revenue system of the state not in conflict with law."

On properties in different counties, throughout the state, the Nevada Tax Commission, as the final state board of equalization, at its session commencing on the second Monday in October, 1914, made increases in valuations amounting to many millions of dollars. The valuations in Esmeralda County were increased over $2,000,000, or about 50 per cent.

Last April the respondent commissioners prepared a budget, by which they estimated the amount required to pay the expenses of conducting the public business of Esmeralda County for the ensuing year at $90,109.76, and as the county tax rate fixed 5 cents for interest and sinking fund, 30 cents for county schools, and $1.20 for general county purposes, making a total of $1.55 for each $100 of assessed valuation.

On or about the 20th day of November, 1914, the petitioners ordered respondent Johnson, as auditor of Esmeralda County, to extend upon the assessment roll the increased valuation assessment, and, in view of such increased assessment, ordered the board of county commissioners to reduce the tax rate for county purposes from $1.55 to $1.16 on each $100 of assessed valuation. The respondents have accepted the increase so made in valuation.

At the meeting of the board of county commissioners on November 23, 1915, the county treasurer reported that through inadvertence the amount required for the county schools had not been included in the budget, but, to provide for the same, a tax of 30 cents had been fixed by the board; that for lack of funds it was impossible to allow bills for salaries and other expenses for the month of October; that all the funds were depleted; that interest-bearing warrants were being issued for teachers' salaries; that on December 1, 1914, the county liabilities would amount to approximately $17,000; and that the expenses of the county exceeded the budget in that sum. The board estimated that the tax levy made by it in April would raise only sufficient revenue on the increased valuation to meet the requirements of the county for the current year, and ordered that the tax rate of $1.55, as previously made by the board, be collected, and the auditor was instructed to extend and deliver to the county treasurer the tax roll accordingly.

As respondents are obeying the order of petitioners increasing the valuations, the only question necessarily involved is whether the Nevada Tax Commission is authorized by the statute to order the board of county commissioners to reduce the rate of $1.55, fixed by them, to $1.16, as ordered by the commission.

An act passed in 1891 (Rev. Laws, sec. 3818) provided: "That if, after the equalization of taxes in the several counties of this state, it shall appear that the levy previously made by the board of county commissioners of any county of this state for county purposes will result in the

collection of a revenue, either in excess or a deficiency of
the requirements of such county for the current year,
then, and in such event, the board of county commis-
sioners in any such county shall have the power, and it
is hereby made the duty of such board of county commis-
sioners, to immediately meet and either reduce or raise
the rate of taxation, so previously levied, to such a sum
as such board in its judgment may consider sufficient to
insure the collection of such an amount of revenue as
will answer all the requirements of such county for such
current year."

In an act passed in 1903 (Rev. Laws, sec. 3827), section 2,
applicable to Esmeralda County, provided that the tax
rate for the year 1905 for county purposes, exclusive of
the tax to pay the interest and maintain the sinking fund
applicable to bonded indebtedness, should be 5 cents lower
on each $100 of assessed valuation than the tax rate for
such county purposes in 1904; that thereafter such tax
rate should be diminished annually at the rate of not less
than 5 cents on each $100 of assessed valuation until it
reached $1.50 on the $100 of assessed valuation, and there-
after should be reduced annually at the rate of 2½ cents
on the $100 of assessed valuation until it reached 70 cents
on the $100 of assessed valuation; and that thereafter the
permanent limitation of taxation for such county pur-
poses, exclusive of tax to pay the interest and maintain
the sinking fund, should be 70 cents on each $100 of
assessed valuation.

In the answer it is alleged that the board fixed the
tax rate at $1.20 in April, in compliance with the last-
mentioned act of the legislature. As the board has not
attempted to raise or lower the rate so fixed, any ques-
tion as to whether they may increase or decrease the
rate under the act of 1891 is not material if the tax com-
mission is not authorized to increase or decrease the rates
or to order the board to reduce the rate fixed by the
board. The first subdivision of section 4, quoted above,
of the act creating the Nevada Tax Commission states
that they are "to confer with, advise and direct assessors,

sheriffs (as ex officio collectors of licenses), and county boards of equalization, as to their duties." The language in other parts of that section is broad enough to amplify the powers of the commission in regard to valuations. While, as indicated, the act does provide that the commission may direct county boards of equalization, assessors, and sheriffs as to their duties, it nowhere specifically provides that the commission may direct boards of county commissioners in regard to fixing or changing rates, or otherwise. The commission is not authorized to make any direction or order for the reduction of the rate fixed by the board, unless under the language of the act which states that the "commission is hereby empowered to exercise general supervision and control over the entire revenue system of the state," without giving any limitation to these words by the ones following, "and in pursuance whereof shall possess the following special powers." If, by being "empowered to exercise general supervision and control over the entire revenue system of the state," it may be assumed that the county revenue systems are included, and further considered that the commission may raise or lower the county rate or order the board of county commissioners to increase or decrease such rate when there is no specific provision of law so stating, it would have to be admitted that, under such general language, the commission would be empowered to fix, raise, or lower the state rate.

[2] As held in numerous cases, including *Mighels v. Eggers*, 36 Nev. 364, 136 Pac. 104, *State v. Ross*, 20 Nev. 61, 14 Pac. 827, *Maynard v. Newman*, 1 Nev. 271, and *Thorpe v. Schooling*, 7 Nev. 15, it is a common rule of construction that, when not in conflict with the constitution, the intention of the legislature is to govern in the construction of statutes. It is not apparent that, by the use of the language quoted in reference to the exercise of general supervision and control over the revenue system of the state, the legislature intended to repeal or modify the acts fixing the state rate and providing for the fixing of county rates by the boards of county commissioners,

or to empower the commission to make final adjustment of county tax rates after they had been fixed by the county boards.

The provision in the act that the commission may direct assessors and sheriffs, as collectors of licenses, as to their duties, indicates that, if the legislature had intended to confer so important a function upon the commission as the increasing or decreasing of the county rate after it had been fixed by the county commissioners, it would have specified this power, as it did in relation to others of less importance. The same inference may be drawn from the fact that the language of the statute states that the commission may direct county boards of equalization as to their duties, and that the county commissioners shall supply books with forms for assessment as prescribed by the commission, but nowhere states that the commission may direct boards of county commissioners or order a reduction of the county rate. In the construction of a statute in which certain things are enumerated, other things are to be excluded. (*In Re Bailey's Estate*, 31 Nev. 377, 103 Pac. 232, Ann. Cas. 1912A, 743.)

[3] In the absence of a clear showing, the repeal or modification of statutes is not presumed, and, when there is a general and special statutory provision relating to the same subject, the special provision will control. (*State v. Ducker*, 35 Nev. 214, 127 Pac. 990; *State v. LaGrave*, 23 Nev. 373, 48 Pac. 193, 674; *State v. Donnelly*, 20 Nev. 214, 19 Pac. 680; *State v. Hamilton*, 33 Nev. 418, 111 Pac. 1026.)

After largely increasing the valuations, it is natural and laudable for the tax commission to seek to have the rate reduced, so that an amount of taxes will not be collected from property owners largely in excess of the needs of the county. But under the act of 1891 the power of reducing or increasing a rate, so that under the valuation only sufficient money will be collected to meet the needs of the county, is placed with the board of commissioners, whose duty it is to exercise due care for the protection of the taxpayers, and lower the rate if it will yield more

revenue than is necessary to meet the expenses and obligations of the county under economical management.

[4] It has been urged that under the constitution the legislature could not confer upon the commission power to fix the tax rate because the commission is composed of members appointed and not elected by the people. Following precedent, the court does not determine constitutional questions when unnecessary for a decision of the case.

The application for the writ is denied.