No. 2625

## EX REL. CITY OF CARSON *v.* COUNTY COMMISSIONERS

April 3, 1924.                     224 Pac. 615.

1. STATUTES—REPEALS BY IMPLICATION NOT FAVORED; BOTH LAWS MAINTAINED, UNLESS IT IS PERFECTLY MANIFEST FORMER LAW WAS INTENDED TO BE ABROGATED.

Repeals by implication are not favored, and if it be not perfectly manifest, either by irreconcilable repugnancy, or by some other means equally indicating the legislative intention to abrogate a former law, both laws must be maintained.

2. STATUTES—RULE FOR CONSTRUING CONFLICTING STATUTES STATED.

Statutes in pari materia, or one purporting to revise the whole subject-matter of former statutes, must be construed, if possible, to give effect to both statutes.

3. MUNICIPAL CORPORATIONS—BUDGET LAW HELD A COMPLETE FINANCIAL PLAN IMPLIEDLY REPEALING REPUGNANT REVENUE MEASURES.

Stats. 1917, c. 149, as amended by Stats. 1921, c. 217, the budget law, provides a complete financial plan for a definite period, and, though containing no repealing clause, necessarily impliedly repeals all former repugnant revenue acts, including Rev. Laws, 842, requiring county commissioners to apportion part of the general road tax funds to each incorporated city in their respective counties, especially in view of section 10 of the budget law, as amended by Stats. 1921, c. 217, sec. 3, prohibiting any member or officer "of any city, town, municipality * * * to authorize, allow, or contract for any expenditure unless the money for the payment thereof has been specially set aside for such payment by the budget," and since both acts relate to raising revenue.

ORIGINAL PROCEEDING in mandamus by the State, on the relation of the City of Carson, and others, as Trustees of the City, against E. S. Daugherty and others, as the Board of County Commissioners of Ormsby County.

**Writ discharged. Proceeding dismissed.** (SANDERS, J., dissenting.)

*McCarran & Mashburn,* for Relators:

Sections 767 to 876 of the Revised Laws, being the act providing for the incorporation, etc., of cities, is general in its nature and applies to Carson City, notwithstanding its special charter. Chartz v. Carson City, 39 Nev. 285.

Taxation is a matter of local concern, of home rule. 26 R. C. L. 72, 74; Cooley on Taxation (3d ed.) 233.

The budget law (Stats. 1917, p. 249) does not repeal Rev. Laws, 842. If it be not manifest that the legislature intended to abrogate a former law, both must be maintained. Repeal by implication is not favored. If both the new and the old law can be supported, both laws must be upheld, and the new law does not repeal, by implication, the old law. Thorpe v. Schooling, 7 Nev. 15; State v. Rogers, 10 Nev. 319. Repeals by implication are not favored and are held to have occurred only in cases of irreconcilable repugnancy, and where the two acts cannot stand together. Estate of Walley, 11 Nev. 260.

There is nothing in the budget law that relates even remotely to the incorporation, classification, or government of cities.

The most that State v. Boyd, 27 Nev. 249, holds is that tax money raised in one district cannot be used in an entirely distinct district. Cooley on Taxation (3d ed.) 229–233.

Section 842 is not unconstitutional, as it does not clearly appear to violate any constitutional restriction. Ex Parte Sticknoth, 7 Nev. 233; Ex Parte Boyd, supra; Dayton M. Co. v. Seawell, 11 Nev. 394; State v. Westerfield, 24 Nev. 29; Nash v. McNamara, 30 Nev. 114; State v. Ah Pah, 34 Nev. 283. The title is sufficient if it relates to the subject briefly. State v. Ah Pah, supra.

*John M. Chartz,* District Attorney, for Respondents:

Section 842 of the Revised Laws is not applicable to Carson City, which was incorporated under a special act.

Section 76 must be read in connection with the whole act and be limited to the object of the act. Roney v. Buckland, 4 Nev. 45; Forsyth's Estate, 45 Nev. 394; Ex Parte Siebenhauer, 14 Nev. 365. Section 76, being general, cannot apply to Carson City.

Section 76 is repealed by the budget law, since its provisions are repugnant thereto. An entirely different procedure is outlined. The whole matter was revised and former acts inconsistent were repealed. Thorpe v. Schooling, 7 Nev. 15; State v. Rogers, 10 Nev. 319; Estate of Walley, 11 Nev. 260.

Section 76 is void for uncertainty. It is also unconstitutional in that it seeks to take private property for public use without just compensation. Sec. 8, art. 1.

Section 76 violates section 8, article 1, of the constitution in that it seeks to take private property for public use without just compensation. State v. Boyd, 27 Nev. 249.

It does not conform to section 17, article 4, of the constitution in that the title is insufficient. State v. Commissioners of Washoe Co., 22 Nev. 399; State v. Silver, 9 Nev. 227; State v. Gibson, 30 Nev. 353; Wheeler v. State, 102 N. W. 773.

By the Court, Coleman, J.:

This is an original proceeding in mandamus.

The petition alleges that the city of Carson is a municipal corporation existing under and by virtue of a special act of the legislature of the state entitled "An act to incorporate Carson City," as amended March 11, 1921 (Stats. 1921, p. 140); that the individual petitioners are the duly elected, qualified, and acting trustees thereof; that the defendants are, and ever since the first Monday in January, 1921, have been, the duly elected, qualified, and acting commissioners of the county of Ormsby, State of Nevada, and ever since said last-mentioned date have constituted the board of county commissioners of said county; that on or about the 5th day of April, 1922, the said board of county commissioners duly levied upon all of the taxable property in

said city of Carson, and upon all of the taxable property in said county of Ormsby, in the manner provided by law, a tax of 40 cents on each $100 of the valuation of said property for road and bridge purposes; and that the tax so levied and the money derived therefrom constitutes the general road fund of said county of Ormsby for that year. It is further averred that all of the taxable property in said county, inclusive of the property within said city, was assessed for the year 1922 at the total valuation of $1,735,074, and that all of the taxable property in said city was assessed for the year 1922 at the value of $1,034,021; that pursuant to said levy and assessment there was assessed and levied upon all of the said property of Ormsby County, inclusive of the property within the city of Carson, a total tax of $6,940.30 for road purposes in and for Ormsby County, and that there was assessed and levied against the property within said city a total tax of $4,136.08 for road purposes and to constitute a part of the general road fund of said county; that pursuant to said levy and assessment there was collected by and for said county for road purposes the whole of the tax so assessed against and levied upon all of the property in the whole of said county, inclusive of the property in said city, the sum of $6,940.30, except the sum of $28.06; and that the sum so collected was thereupon only credited to and became the whole of the general road fund of said Ormsby County.

Section VII of the petition reads:

"That section 842, Revised Laws of Nevada (1912), provides that 'the several boards of county commissioners in this state shall, from time to time, upon request of the city council, apportion to each incorporated city within the respective counties such proportion of the general road fund of the county as the value of the whole property within the corporate limits of such city, as shown by the assessment roll, shall bear to the whole property of the county, inclusive of the property within incorporated cities, and all such moneys so apportioned shall be expended upon the streets, alleys

and public highways of such city under the direction and control of the council.'

"That your petitioners and relators are informed and verily believe, and upon such information and belief allege, that the above-mentioned section of law and the provisions thereof are still in full force and effect, and apply to the said city of Carson; and that said city of Carson is the only incorporated city within said county of Ormsby."

It is further averred that demand has been made upon the defendants that they apportion and pay over to the city of Carson the amount due it pursuant to said section of the Revised Laws; that said demand has not been complied with, and that the defendants refuse to comply therewith.

Upon the filing and presentation of said petition, an alternative writ of mandamus was issued. In due time the defendants appeared and demurred to the sufficiency of said petition upon several grounds. We deem it necessary to consider but one of them.

It is urged in behalf of the respondents that section 842 (above quoted) was repealed by an act entitled "An act regulating the fiscal management of counties, cities, towns, school districts, and other governmental agencies," approved March 22, 1917 (Stats. 1917, p. 249), as amended Stats. 1921, p. 325, commonly called the "Budget Law." Sections 1, 2, and 3 of this act read:

SECTION 1 (1917): "The business of every county in this state on and after the approval of this act shall be transacted upon a cash basis and in accordance with the terms of this act."

SECTION 2 (1921): "For the purpose of this act every county, city, town, municipality, school district, county high school, or high-school district or educational district, and the governing boards thereof, are deemed to be governmental agencies of the State of Nevada."

SECTION 3 (1917): "The county commissioners of each county in this state shall, between the first Monday of January and the first Monday of April of each year, prepare a budget of the amount of money estimated to

be necessary to pay the expenses of conducting the public business of said county for the then current year. Said budget shall be prepared in such detail as to the aggregate sums and the items thereof as shall be prescribed by the Nevada tax commission and shall in any event show the following detail:

"(1) Estimated aggregate assessments upon which the tax rates are based.

"(2) Real property.

"(3) Personal property.

"(4) Net proceeds of mines.

"And shall show the estimated expenditures in detail, showing administrative expense, indigent fund, roads and bridges, interest and redemption, common schools, high schools, emergency.

"The estimated receipts from all sources in the following detail: Taxation, inheritance tax, licenses, fees, poll tax, interest on county moneys, rentals and sales of county property, forest service, state's proportion of county officers' salaries, state school money.

"Upon the preparation and completion of said budget the same shall be signed by the commissioners of the county approving the same and by the county clerk, and the several sums set forth in said budget under estimated expenditures shall be thereby appropriated for the several purposes therein named for the then current fiscal year. Said budget shall be forthwith filed in the office of the auditor and recorder, and a copy thereof shall then be published for two publications, one week apart, in the official newspaper of the county, if there be one, or if there be no official newspaper, then in a newspaper to be designated by the board of county commissioners."

Section 4 of the budget law provides that it shall be unlawful for any commissioners or for any board of county commissioners to contract any debt not included in the budget. Section 5 provides that in cases of great necessity or emergency the board of county commissioners may borrow money and expend it to meet such emergency and necessity.

Section 9 of the act reads (Stats. 1921, p. 325) :

"It shall be the duty of the governing board of every city, municipality, town, school district, county high school, or high-school district or educational district in this state between the first Monday of January and the first Monday of April of each year to prepare a budget of the amount of money estimated to be necessary to pay the expenses of conducting the public business of such city, municipality, town, school district, county high school, or high-school district or educational district, for the then current year. Such budget shall be prepared in such detail as to the aggregate sums and the items thereof as shall be prescribed by the Nevada tax commission. The budget of any town or city or municipality shall in any event show the following detail:

"TOWNS AND CITIES.

"Estimated valuation:

| | |
|---|---|
| Realty | —— |
| Improvements | —— |
| Personal | —— |
| Total | —— |

"Requirements (estimated) :

| | |
|---|---|
| Salaries of officials | —— |
| Other administrative expense | —— |
| Police department | —— |
| Fire department | —— |
| Streets and alleys | —— |
| Bond interest and redemption | —— |
| Miscellaneous (itemized) | —— |
| Special (itemized) | —— |

\*    \*    \* "

Section 10 reads (Stats. 1921, p. 327) :

"It shall be unlawful for any governing board or any member thereof or any officer of any city, town, municipality, \*  \*  \* to authorize, allow, or contract for any expenditure unless the money for the payment thereof has been specially set aside for such payment by the budget. Any member of any governing board or any officer violating the provisions of this section shall be removed from office in a suit to be instituted by the city attorney in the case of cities, and by the district attorney in cases of towns, school districts, \*  \*  \*

wherein such officer or member of the governing board resides, upon the request of the attorney-general or upon the complaint of any interested party."

By section 11 it is provided that in case of necessity or emergency the governing board of any city may borrow money.

1. On behalf of the petitioners it is contended that, since the budget law does not expressly repeal section 842 of the Revised Laws, it cannot be construed as impliedly repealing it, as it does not clearly appear that the legislature intended such a result.

The law as to repeals by implication is clearly settled in this state. Counsel for the petitioners and respondents agree as to the law on this point as expressed in Thorpe v. Schooling, 7 Nev. 15, where it is said:

"True, repeals by implication are not favored; and if it be not perfectly manifest, either by irreconcilable repugnancy, or by some other means equally indicating the legislative intention to abrogate a former law, both must be maintained. The intention, if perfectly clear, however, must control, however it may be expressed or manifested. It is upon this principle, evidently, that it is held that a statute revising the whole subject-matter of a former law repeals it."

This rule has often been recognized. Estate of Walley, 11 Nev. 260; State v. Ducker, 35 Nev. 214, 127 Pac. 990; State v. Eggers, 36 Nev. 372, 136 Pac. 101.

2, 3. Hence, the question for us to determine is whether there is such an irreconcilable repugnance between the two statutes as results in a repeal of the former by the latter. In approaching this task we recognize that it is a well-settled rule that in construing statutes in pari materia, or one purporting to revise the whole subject-matter of former statutes, they must be so construed as to give effect to both if possible.

In solving the question before us we must endeavor to ascertain the purpose of a budget law. The budget system has long been in use in Europe, and there has been much agitation for its adoption in this country for many years. The main argument in its favor has been

that it assures economy in the administration of a government, since by such a system a definite amount of money is raised and appropriated for each branch of the government for each year, beyond which no obligations can be incurred. The idea of a budget is expressed in "Budget Making" (Buck), page 2, as follows:

"The budget, in the strict sense of that term, is a complete financial plan for a definite period, which is based upon careful estimates both of the expenditures, needs, and of the probable income of the government. That is, the plan must present two sides, an expenditure side, and an income, or revenue, side."

See, also, "Budget Making in Democracy" (Fitzpatrick); "The Problem of a National Budget" (Willoughby). See, also, an article entitled "Budget Making and the Work of Government," by Henry Jones Ford, in volume 62, p. 1, of the Annals of the American Academy of Political and Social Science.

If the idea, as above expressed, that the budget system "is a complete financial plan for a definite period," is the correct one, then it must inevitably follow that the adoption of the budget law repeals section 842 of the Revised Laws, and all other provisions relating to the raising and expenditure of revenue by the towns and cities of the state, for the reason that, if such a law is a complete system, it must be held, as said in Thorpe v. Schooling, supra, to revise the whole subject-matter of the former laws on the subject in hand. Let us see if the budget law is a complete financial plan for the raising of revenue by municipalities in this state.

Section 1 of the law provides that after its approval the business of every county shall be transacted upon a cash basis, and in accordance with the terms of the act. This language is significant. By providing that the business of the counties shall be transacted in accordance with the terms of the act, it expressly prohibits the transaction of its business according to the terms of any other act, or of any other section of any other act. Nothing can be clearer than this. Any other statute or section which provides for the doing of county business in any other manner than as provided by this act

is repugnant to the budget law, and is made so by the terms of that law itself; hence, any such act or statute is repealed by implication.

Section 3 as quoted provides that the county commissioners of each county shall, between the first Monday in January and the first Monday in April of each year, prepare a budget of the amount of money estimated to be necessary to pay the expenses of conducting the public business of said county, for the then current year, and that it shall show the estimated expenditures in detail, among other things, for road and bridges. This provision is clear and concise. It cannot be misconstrued. It provides for what period and for what purposes the county budget shall be made up. It is for the current year and for the "public business of said county." One of the items of said public business of said county specified is for "roads and bridges." This section expressly limiting the funds to be raised to the "public business of said county," it must follow that no portion of the $6,940.30 raised for road purposes pursuant to assessment and levy, as charged in the petition, can go to the city, for on no theory can it be said that money raised for the public business of said county can be transferred into the treasury of the city of Carson.

Section 9 of the act provides that it shall be the duty of the governing board of every city between the first Monday in January and the first Monday in April of each year to prepare a budget of the amount of money estimated to be necessary to pay the expenses of conducting the public business of such city for the then current year. Among the estimates required to be made in such budget is one for streets and alleys.

By the act in question it is made unlawful for the governing board of any county or city to contract for any expenditures unless the money for the payment thereof has been specially set aside for such payment by the budget. The only exception to this is, in case of necessity or emergency, such board may borrow money.

Section 9 shows a repugnance between the budget law and all other laws pertaining to the raising of revenue

by taxation for current expenses of a city government. It specifies the items which shall be included in the city budget, particularly designating streets and alleys. That the state legislature intended the method provided in section 9 for raising money for city purposes to be exclusive is clearly shown by the provision of section 10 of the act, wherein it is provided:

"It shall be unlawful for any governing board or any member thereof or any officer of any city, town, municipality, * * * to authorize, allow, or contract for any expenditure unless the money for the payment thereof has been specially set aside for such payment by the budget."

If there were any doubt as to the intention of the legislature after a consideration of the other sections of the law, the provision just quoted dissipates it. It shows that it was the purpose of the legislature to limit the expenditure by the cities of the state to money raised pursuant to the budget law. It would certainly be remarkable if the legislature contemplated the raising of revenue in behalf of the cities of the state, and then denied them the privilege of expending it for their benefit. It is clear that the legislature considered the budget law a system complete in itself for the raising of revenue for county and city purposes. This being true, it must be held repugnant to section 842 of the Revised Laws, and hence to repeal it.

It is said, however, that the act of which section 842 is a part relates to the incorporation of cities and towns, while the title of the budget law shows it to be "An act regulating the fiscal management of counties, cities, towns, school districts, and other governmental agencies," and hence it is clear that the purposes of the two acts are not repugnant. We do not deem it necessary to consider this contention at length. It is clear that section 842 of the Revised Laws, upon which petitioner relies, relates solely to the question of revenue. The budget law is an act complete in itself, revising all of the statutes of the state as to the raising of revenue for municipal purposes and, being repugnant to them,

must control.  State v. Cole, 38 Nev. 488, 151 Pac. 944; Thorpe v. Schooling, supra.

Our esteemed associate is of the opinion that the budget law does not repeal section 842 of the Revised Laws.  He refers to certain well-known propositions of law of which there can be no doubt.  Of course, the legislature has plenary power over the highways of the state, subject to constitutional limitations.  But what has that to do with it?  The question is: What has the legislature in fact done?  We have pointed out to our own satisfaction that the budget law repeals the former law.  If it repeals it, the amendment to the statute of 1866, quoted by our associate, being limited to a class of counties of which Ormsby is not one, certainly could not affect that repeal.  Counsel for petitioner does not urge that the amendment in question has any bearing upon the problem presented, and we cannot see that it has.

It is ordered that the alternative writ heretofore issued be discharged and that these proceedings be dismissed.

DUCKER, C. J.: I concur.

SANDERS, J., dissenting:

This is a controversy between the city of Carson and the board of commissioners of Ormsby County over the apportionment of the general road fund of the county for the year 1923, created by the levy of a tax in 1922 by said board of 40 cents on the $100 of value upon all the property in the county of Ormsby, inclusive of that within the city of Carson.  The amount in controversy is $4,136.08.

In July, 1923, the city made request or demand upon the board to apportion to it such proportion of the general road fund of the county as the value of the whole property within the city, as shown by the assessment roll, bears to the whole property of the county, inclusive of the property within the city, to be expended upon its streets, alleys, and highways under the direction and control of the city trustees.  The board refused the

request or demand for such apportionment, and the city made application for and obtained a writ, commanding the board to show cause before this court why it should not be compelled to comply with the city's request, as provided by the statute set out in the petition for a writ of mandamus. The board, instead of making return to the order to show cause, demurred to the petition, and for grounds of demurrer alleged that the law upon which the city relies is unconstitutional and void; that the law upon which the city relies has no application to the city of Carson chartered under a special act of the legislature; that the law upon which the city relies was repealed by implication by an act entitled "An act regulating the fiscal management of counties, cities, towns, school districts, and other governmental agencies." Stats. 1917, p. 249.

That it is legitimate legislation to require the several boards of county commissioners in this state, under our constitution and statutes, to apportion to each incorporated city within the respective counties such proportion of the general road fund of the county as the value of the whole property within the corporate limits of such city, as shown by the assessment roll, shall bear to the whole property of the county, inclusive of the property within incorporated cities, where the fund is created by the levy of a tax upon the whole property in the county, inclusive of that within incorporated cities, is not debatable. In support of the validity and constitutionality of such legislation, I cite the following cases: Pike County v. Troy, 173 Ala. 442, 56 South. 131, 274, Ann. Cas. 1914A, 771; Town of Fairplay v. Park County, 29 Colo. 57, 67 Pac. 152; Duval County v. Jacksonville, 36 Fla. 196, 18 South. 339, 29 L. R. A. 416; Genesee v. Latah County, 4 Idaho, 141, 36 Pac. 701; Newton v. Jasper Co., 135 Iowa, 27, 112 N. W. 167, 124 Am. St. Rep. 256; Baird v. State, 83 Ill. 387; Lincoln County v. Brookhaven, 90 Miss. 5, 41 South. 449; Chadon v. Dawes County, 82 Neb. 614, 118 N. W. 469.

Looking to the statute relative to public highways, the Nevada legislature, in March, 1866, approved an act, section 1 of which reads as follows:

"All public roads, and the streets and alleys in incorporated cities or towns in this state, now used or lawfully entitled to be used as such, and all such roads, streets and alleys as the board of commissioners of the county in which they are situated shall hereafter lawfully cause to be opened, are hereby declared to be public highways. * * *" Stats. 1866, p. 252.

The legislature, in the exercise of its authority over highways, has universally delegated the power to the boards of county commissioners to levy taxes for road purposes, but has at all times retained its inherent power, authority, and control over the revenues raised for road purposes. The fact that an incorporated city is vested with plenary control over the streets and alleys and is given authority to levy a tax upon the property within the city for their maintenance and improvement does not preclude the boards of commissioners of the several counties from levying a tax upon the whole property of the county, including that within incorporated cities situated therein, for county road purposes. This has been the legislative policy with respect to public highways since the organization of the state.

My associates do not discuss the constitutional questions raised by the demurrer, but I have given the same careful consideration, and reach the conclusion that both on principle and upon the authorities above cited the law is not vulnerable as being defective in its title; that it is not special legislation nor violative of due process or equal protection of the law.

The law upon which the city of Carson relies in this case to have the board of county commissioners of Ormsby County apportion to it such proportion of the general road fund of the county as the value of the whole property within the city bears to the whole property of the county, inclusive of the property within the city, first made its appearance in the Statutes of 1907, and is found in section 76 of an act providing for the incorporation of cities, their classification and government. Stats. 1907, p. 241; Rev. Laws, 842.

I cannot concede the sufficiency of the reasons assigned for declaring that the law is repealed by implication by

the enactment and adoption of the so-called budget law of 1917 and the amendments thereto. The question is not so much whether the act regulating the finances of counties and cities repeals the law upon which the city of Carson relies as whether by the adoption of the budget system the legislature intended to prevent any part of the general road fund created by the levy of a tax upon the whole property within the county, inclusive of the whole property within a city situated therein, being apportioned to the latter to be expended upon the streets, alleys, and highways therein. The general road fund of Ormsby County is created under the budget law just as it was before its adoption. For the purpose of the budget law every county, city, town, municipality, and the governing boards thereof are deemed to be governmental agencies of the state just as before its enactment, and, in consequence, to effectually carry out the object and purpose of the budget system, it is necessary that their fiscal management as governmental agencies be kept separate and distinct; but in reference to the county road fund the state's policy remains unchanged, the legislature having expressly said long prior to the adoption of the budget law that all public roads and the streets and alleys in incorporated cities are public highways, which are maintained by a tax levied by the commissioners upon the whole property within the county, including that of incorporated cities and towns situate within the territorial limits of the county.

In support of my position that the budget law and the law of 1907, upon which this proceeding is based, may operate together with respect to the apportionment of the general road fund, I direct attention to the amendment made to section 3 of the act of 1866 by the legislature at its session in 1921, designated as Assembly Bill No. 132, Washoe County Delegation. Stats. 1921, p. 365. The section is amended by the addition of the following proviso:

"*Provided, however,* that in counties containing incorporated cities with a population of more than twenty-five hundred persons, the levy shall not be less

than one-eighth of 1 per cent, and one-half of such proportion of said general road tax or fund of said county as the value of the whole property within the corporate limits of the said city or cities shall bear to the whole property within the county, inclusive of the property within the city, or cities, shall be apportioned and paid to the city treasurer of said city, and shall be placed in the general fund of the city or cities."

The amendment is not material here save as it indicates, in my opinion, an intent on the part of the legislature to direct how the general road fund may be apportioned by the commissioners in counties containing incorporated cities, notwithstanding the budget law. The amendment shows upon its face that it is the outgrowth of the law of 1907, upon which the city of Carson relies. It recognizes that streets in incorporated cities within a county are not so distinctively and exclusively a municipal purpose as to render it impossible under the budget system to authorize boards of county commissioners to devote revenues raised by county taxation for public roads on the property situated within incorporated cities to the maintenance and improvement of the streets, alleys, and highways therein. The county is in legal effect one road district. If the legislature has authority to grant to a city of more than 2,500 population a portion of the general road fund of the county in which it is situated, I see no reason why the same privilege should not be granted to a city of less population under the law of 1907. The principle in both cases is the same. The legislature certainly did not intend that the budget law should operate to discriminate in favor of cities having 2,500 population or more against those cities having a less population.

I am not called upon to discuss either the wisdom or policy of the law. It may operate unjustly, and result in higher taxes for road purposes, but this is a matter for the legislature.

I see no sufficient reason for holding that the legislature intended by the adoption of the budget system for the better regulation of the finances of the subordinate

agencies of the state government to ignore the equitable considerations that moved the legislature to enact the law of 1907, upon which this proceeding is founded. My conclusion is that the law upon which Carson City relies in this case is not repealed by implication by the so-called general budget law regulating the finances of the governmental agencies of the State of Nevada, and therefore the demurrer to the petition for the writ, for all of the reasons stated, should be overruled.