THE STATE OF NEVADA, Upon the Relation of THE CITY OF LAS VEGAS, a Municipal Corporation of the State of Nevada, Et Al., Petitioners, *v.* THE COUNTY OF CLARK Et Al., Respondents.

No. 3237

November 5, 1938. 83 P. (2d) 1050.

*Gray Mashburn,* Attorney-General; *W. T. Mathews* and *Alan Bible,* Deputy Attorneys-General; Roger *Foley,* District Attorney; and *A. S. Henderson,* Deputy District Attorney, for Respondents:

*Harry H. Austin,* City Attorney, for Petitioners:

# OPINION

By the Court, DUCKER, J.:

This is an original proceeding in mandamus. The petition upon which the alternative writ was issued herein shows, inter alia, that between the first Mondays of January and March of the year 1938, the board of commissioners of said city of Las Vegas, at its regular meeting on Friday the 4th day of March 1938, did prepare a budget of the amount of money estimated by the board to be necessary to pay the expenses of conducting the public business of such city for the then current year. The budget was completed, approved and signed by the governing board of the city and thereafter on said 4th day of March filed with the city clerk. Thereafter, on or about the 7th day of said March the said city did deliver to the respondent county of Clark and its said board of county commissioners a true and correct copy of said budget. Thereafter the estimated receipts and expenditures for the year 1938, and the aggregate valuation and tax rates as shown by said budget were duly published. On said 4th day of March, at its regular meeting the board of commissioners of said city of Las Vegas adopted the following resolution: "Be it resolved by the board of commissioners of the city of Las Vegas, Clark County, Nevada, that a tax for the year 1938 be and the same hereby is levied upon all the real and personal property within said city of Las Vegas in the total sum of $79,350.00, the same being $1\frac{1}{2}\%$ of the assessed value of all the real estate and personal property within said city, made taxable by law."

On Thursday the 10th day of March A. D. 1938, the respondents, Kenneth O. Earl, E. F. Davison and George T. Hanson, as members of the board of county commissioners of said Clark County, held a meeting in the county courthouse of said county and reduced the said tax rate for the year 1938, as so fixed by the said city of

Las Vegas, from the sum of $1.50 upon each one hundred dollars of the assessed value of all real estate and personal property within the city of Las Vegas made taxable by law, to the sum of $1.05 per one hundred dollars of the assessed value of such property and published their action in a Clark County newspaper under the date of March 19, 1938. On March 26, 1938, said county commissioners prepared and adopted a budget for the amount of money estimated to be necessary to pay the expenses of conducting the public business of said county for the years 1938–1939, in which said budget they unlawfully assumed to reduce and then and there officially declare that they were then and there reducing the said city tax rate for the year 1938, as so fixed by said city, from the sum of $1.50 upon each one hundred dollars of the assessed value of all real estate and personal property within said city made taxable by law, to the sum of $1.05 per one hundred dollars of such value.

It is alleged that the board of county commissioners instructed the county assessor, county auditor, and county tax receiver, that the tax rate of the city of Las Vegas for the year 1938, was the sum of $1.05 per each one hundred dollars of assessed valuation and instructed the county auditor to extend the taxes upon the tax roll of the county so as to show that the tax levy of the city for the year 1938 was the sum of $1.05 and instructed the county tax receiver to credit into the city account from all tax money received by him as taxes for the year 1938, upon the real estate and personal property situate within the said city of Las Vegas, such amount and such amount only, as is represented by taking and computing the sum of $1.05 from and upon each one hundred dollars of such assessed value.

It is alleged that since the 28th day of March 1938, said tax receiver has been receiving certain taxes upon personal property for the year 1938, situate in the city of Las Vegas, and has actually credited from such tax

money so received, such sums and such sums only as are represented by taking and computing the sum of $1.05 upon each one hundred dollars of assessed value of personal property upon which said taxes have been so paid, and that said tax receiver proposes and threatens to, and unless restrained, will continue to so credit such tax money, rather than using the tax rate as so levied by said city in the sum of $1.50 per each one hundred dollars of assessed value of said property.

The prayer of the petition is to the effect that the respondents, members of the board of county commissioners, be commanded to countermand their instructions to the county auditor to extend the taxes upon the tax roll of said county so as to show that the tax levy of the city for the year 1938 is the sum of $1.05, and the county auditor be commanded to extend the taxes upon the tax roll of said county so as to show that the levy of the city for the year 1938 was and is the sum of $1.50, and that the tax receiver of the county of Clark be commanded to recognize the latter tax levy and to credit to the city accordingly its proper portion of all taxes for the year 1938 at such rate.

Demurrers to the petition were interposed by respondents, on which the matter was heard, and respondents were given time to file returns to the alternative writ, which has been done. Petitioners filed replies to the returns and also interposed a demurrer thereto. Respondents' demurrers to the petition are upon the grounds (1) that the same does not state sufficient facts, and (2) that this court has no jurisdiction of the subject matter contained in said petitions for the following reasons:

a. That it does not appear from the petition that petitioners have no plain, speedy or adequate remedy at law.

b. That petitioners have a plain, speedy and adequate remedy at law under the provisions of sections 6542 to 6561 N. C. L., and particularly under the provisions of

subdivision 7 of section 6544, section 6432 to section 6438, inclusive, N. C. L., as well as section 6530 N. C. L.

c. That respondents, or either of them, have not the power to perform the alleged duties.

 Have petitioners such a remedy? It is not to be found in the provisions of law relating to a county board of equalization cited in respondents' demurrer. The legislature has not delegated to a county board of equalization the power to levy taxes or to revise a levy made by any taxing body. It is a board of special and limited jurisdiction having only such powers as are specially conferred upon it. State v. Central Pac. R. Co., 21 Nev. 172, 26 P. 225, 1109. The claimed remedy is not provided by section 6530 N. C. L., cited in respondent's demurrers. The power to reduce or raise the rate of taxation conferred therein applies only to taxes for county purposes. But it is strongly insisted by respondents that the Nevada tax commission has general supervision of the entire revenue system of the state and has the power to raise or lower the tax rate of the counties, cities or other political subdivisions. The Nevada tax commission was created by an act of the legislature of 1917 to be composed of the governor of the State, as chairman, and six commissioners appointed by him. Among its powers are the following:

"First—To confer with, advise, and direct assessors, sheriffs, as ex officio collectors of licenses, county boards of equalization, and all other county officers having to do with the preparation of the assessment roll or collection of taxes or other revenues as to their duties; to direct what proceeding, actions or prosecutions shall be instituted to support the law. * * *

"Second—To have the original power of appraisement or assessment of all property mentioned in section 5 of this act.

"Third—To establish and prescribe the general and uniform rules and regulations governing the assessment of property by the assessors of the various counties, not

in conflict with law; to prescribe the form and manner in which assessment rolls or tax lists shall be kept by assessors (and county commissioners shall supply books and blanks for the use of the assessors in such form), and also to prescribe the form of the statements of property owners in making returns of their property; and it is hereby made the duty of all county assessors to adopt and put in practice such rules and regulations and to use and adopt such form and manner of keeping such assessment rolls or tax lists, and to use and require such property owners to use, and the county commissioners shall furnish, the blank statements required by said commission in making their property returns.

"Fourth—To require assessors, sheriffs, as ex officio collectors of licenses, and the clerks of the county boards of equalization, and all other county officers having to do with the preparation of the assessment roll or collection of taxes or other revenues, to furnish such information in relation to assessments, licenses, or the equalization of property valuations, and in such forms as said commission may demand.

"Fifth—To summon witnesses * * * [serve the same and administer oaths.]

"Sixth—To make diligent investigation with reference to any class or kind of property believed to be escaping just taxation; and in pursuance whereof, said commission, or any commissioner thereof, may examine the books and accounts of any person, copartnership, or corporation doing business in the state, when such examination is deemed necessary to a proper determination of the valuation of any property subject to taxation, or the determination of any licenses for the conduct of any business, or the determination of the net proceeds of any mine.

"Seventh—To require boards of county commissioners to submit a budget estimate of the county expenses for the current year in such detail and form as may be required by the commission; to require boards of county

commissioners to increase or decrease the county tax rate of their respective counties to produce the net revenue estimated as necessary for the conduct of such county government, as appears from such budget; to require county boards of education and district school trustees and all school officers having control over any school expenditures in any district in which a special tax is to be levied during the current year, to submit a budget estimate of the expenses for which such tax is levied in such detail and form as may be required by the commission. To require cities, municipalities and towns and the governing boards thereof to submit budget estimates of the expenses for the government of such city, municipality or town for the current year, in such form and detail as may be required by the commission, and to require the governing boards of any municipality, city or town to increase or decrease the tax rate therein to produce the net revenue estimate for the conduct of such municipality, city or town in said budget.

"Eighth—The commission shall have, in addition to the specific powers enumerated, the power to exercise general supervision and control over the entire revenue system of the state.

"Ninth—The commission shall have the power to require county assessors, county boards of equalization, any county auditor or county treasurer to place upon the roll any property found to be escaping taxation.

"Tenth—The commission shall have the power to authorize the secretary to hold hearings or make investigations, and upon any such hearing the secretary shall have the authority to examine books, compel the attendance of witnesses, administer oaths and conduct investigations.

"The enumeration of the foregoing powers shall not be considered as excluding the exercise of any needful and proper power and authority of said commission."

Stats. 1917, pp. 328, 329, c. 177, sec. 3, Comp. Laws, sec. 6544.

Petitioners contend that no remedy is afforded in the foregoing statute against the acts alleged, because the power to revise a levy is not conferred therein. If such revisory power resides in the commission it must be by virtue of subdivision seven, which was not in the act of 1913 creating the first tax commission of this state. Stats. 1913, p. 175, c. 134. In all other respects the powers conferred in that act were substantially the same as in the later act. The former act was under consideration by this court in State v. Boerlin, 38 Nev. 39, 144 P. 738, and the court, after an exhaustive analysis of its provisions, including the provision that the "commission is hereby empowered to exercise general supervision and control over the entire revenue system of the state," section 4, held that the commission was not empowered to order a board of county commissioners to reduce its rate of county taxation.

■ Does the seventh subdivision supply an administrative remedy? If so, petitioner must exhaust such remedy before applying to this court for relief.

The day following the creation of the tax commission the legislature passed an act regulating the fiscal management of counties and cities and other governmental agencies, commonly called the budget law. Stats. 1917, p. 249, c. 149, which has been held to provide a system complete in itself for the raising of revenue for county and city purposes. Carson City v. County Commissioners, 47 Nev. 415, 224 P. 615. By said subdivision seven, budgets made pursuant to said budget law are required to be submitted to the tax commission. Furthermore, by said subdivision seven, as seen above, the tax commission, in case of counties, is empowered "to require boards of county commissioners to increase or decrease the county tax rate of their respective counties to produce the net revenue estimated as necessary for the conduct of such county government, as appears from such budget;" and in case of cities, "to require * * * the governing boards * * * to increase or decrease the

tax rate therein to produce the net revenue estimate for the conduct of such * * * city * * * in said budget."

■ We are of the opinion that the remedy intended in a case such as this is given in the act creating the tax commission. As we have seen, subdivision eight of the tax commission law provides: "The commission shall have, in addition to the specific powers enumerated, the power to exercise general supervision and control over the entire revenue system of the state." True, this subdivision was in the old tax commission act and was considered in State v. Boerlin, supra, as not empowering the commission to order a board of county commissioners to reduce its rate of county taxation. But, as pointed out by the court in that decision, there was then no provision in the tax commission act empowering it to order a board of county commissioners to increase or decrease the county rate of taxation. In the later tax commission act it is specially given that power as to counties, cities, municipalities and towns. In addition, as previously stated, these bodies are required in the later act to submit a budget estimate of government expenses for the current year. Why should these governmental agencies be required to submit a budget estimate of their expenses for the current year in such detail and form as may be required by the commission, if its general supervision and control was to be limited in some respects not apparent from specific provisions or plain implications?

■ It is argued that the specific provisions empowering the commission to order the boards to increase or decrease the tax rates are inoperative because the amount of money necessary to pay the expenses of conducting the public business of the county and city, having been already estimated in the budgets based upon the receipts and expenditures for the current year, and the tax rate estimated accordingly, no other rate could be established.

■ A literal reading of the provisions might indicate such a result. But to so interpret them would be to

attribute to the legislature an absurdity; an inference never indulged in if avoidable. Every word and clause in an act must be given effect if possible and none rendered meaningless by overnice construction. We think the provisions of said subdivision seven, considered in connection with the other provisions of the act heretofore set out, and its spirit and purpose manifest an intention to bring the county revenue system as well as the revenue system of cities, towns, municipalities and school districts under review and final adjustment by the tax commission; and that this applies to rates as well as to valuations and other matters connected with the machinery of raising revenue for their support.

The tax commission is well adapted to that end and the constitutional provision limiting the total tax levy for all purposes, including levies for bonds, within the state, or any subdivision thereof, to not to exceed five cents on one dollar of assessed valuation, makes the duty of adjustment all the more imperative. If this should prove inequitable in practical operation, the legislature will doubtless devise some method of refinancing the political body which may be affected.

It has been suggested by petitioners that if the tax commission is accorded the power to revise a tax levy, then the constitutional question will arise whether subdivision seven can stand at all, being a delegation of tax levying power to a board created by appointment, and not elected by the people. We suggest in turn, that the tax commission is not entirely an appointive body, its principal member and chairman being the governor, the principal elective officer of the state. However, this court will not undertake to decide a constitutional question on a mere suggestion, but will, in such a case, presume that the law under consideration is constitutional.

Respondents' demurrers are sustained and the petition and alternative writ dismissed. Petitioners' motion to strike was denied.