C. C. RONNOW, Respondent, *v.* THE CITY OF LAS VEGAS, NEVADA, THE BOARD OF CITY COMMISSIONERS OF SAID CITY OF LAS VEGAS, NEVADA, L. L. ARNETT, as Mayor of Said City, and JAMES H. DOWN, DAVID FARNSWORTH, H. P. MARBLE and M. E. WARD, as Members of Said Board, Appellants.

No. 3153

February 5, 1937.                    65 P. (2d) 133.

*Ryland G. Taylor,* City Attorney, *A. W. Ham,* Deputy City Attorney, and *Ham & Taylor,* for Appellants:

338

*Chas. Lee Horsey, Leo A. McNamee,* and *Frank McNamee, Jr.,* for Respondent:

**OPINION**

By the Court, TABER, J.:

This is an appeal from a decree of the Eighth judicial district court, Clark County, enjoining appellants (defendants in the court below) from issuing bonds of the city of Las Vegas for the purpose of acquiring or constructing a municipal power distribution system for said city, together with incidental equipment necessary and convenient for the distribution of electrical energy to the inhabitants of said city of Las Vegas. Four orders of said district court, adverse to defendants, are also appealed from.

On October 4, 1935, the board of city commissioners

issued a proclamation proposing to bond the city for the acquisition or construction of a municipal power distribution system for furnishing electrical energy to the inhabitants of said city. Said proclamation was published for three successive weeks, as required by the statute, and on the 4th day of November 1935, the board enacted an ordinance providing for the bond issue set forth in said proclamation.

On December 5, 1935, respondent (plaintiff in the court below), a citizen of this state, and a resident and taxpayer of said city, commenced an action in said district court praying that the defendants be enjoined from issuing the contemplated bonds. The first cause of action alleged that the defendants were without power to acquire or construct a power plant or lighting system for the purpose of furnishing electrical energy to the individual inhabitants or power users of said city. The amended second cause of action alleged that defendants had failed to comply with the requirements of the statute as to the essential proceedings necessary to be taken before issuing such bonds. The amended third cause of action alleged that defendants had failed to submit the proposal for said bond issue to the electors of said city, as required by the provisions of chapter 95 of the 1933 Statutes of Nevada. The district court, on general demurrer, held that the first cause of action stated facts sufficient to constitute a cause of action, but that neither the second nor third cause of action stated sufficient facts to constitute a cause of action. Defendants having elected to stand on their demurrer to the first cause of action, and plaintiff having failed to further amend his second and third causes of action, the court dismissed said second and third causes, and granted plaintiff a perpetual injunction against the issuance of the proposed bonds.

■ We shall first consider whether defendants had the power to issue and sell bonds for the purposes set forth in the aforesaid proclamation. In Tucker v. Virginia City, 4 Nev. 20, at page 26, the court says: "That

municipal corporations have no powers but those which are delegated to them by the charter or law creating them; that the powers expressly given and the necessary means of employing those powers constitute the limits of their authority. It is conceded that beyond this they can have no active existence, and can do no act which the law can recognize as valid and obligatory upon them." And in State ex rel. Rosenstock v. Swift, 11 Nev. 128, at page 140, the court says that "a municipal corporation, in this state, is but the creature of the legislature, and derives all its powers, rights and franchises from legislative enactment or statutory implication."

■ McQuillin, in his work on Municipal Corporations, vol. 1, sec. 367, p. 910, uses this language: "Wherefore the usual formula, invariably supported by judicial utterances and judgments, in substance is: That the only powers a municipal corporation possesses and can exercise are: (1) Those granted in express terms; (2) those necessarily or fairly implied in, or incident to, the powers expressly granted; and (3) those essential to the declared objects and purposes of the municipality, not merely convenient, but indispensable." In the same work, section 356, the author says: "While a strict construction should be applied to the grant of powers to municipalities and especially those which result in public burdens, yet if the power is clearly implied, it should not be impaired by a strict construction. A strict construction must yet be a sensible construction and be based upon the entire context. Or, as it is sometimes put, the power given by a charter is a matter of reasonable construction."

In Chapman v. Hood River, 100 Or. 43, 196 P. 467, 470, the court said: "It is likewise a rule of construction that grants of power are not to be so construed as to defeat the intent of the Legislature or to withhold what is given either expressly or by necessary and fair implication."

Dillon Municipal Corporations (5th ed.) vol. 1, sec.

237: "It is a general and undisputed proposition of law that *a municipal corporation possesses and can exercise the following powers, and no others:* First, those granted in *express words;* second, those *necessarily* or *fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the accomplishment of the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void."

Respondent does not contend that the legislature cannot confer upon a city the power to acquire a municipal light and power plant and furnish lights and power to the inhabitants for their private uses; nor that, if the legislature had conferred such powers upon the city of Las Vegas, it could not enter into competition with Southern Nevada Power Company, which now is and for many years last past has been lawfully engaged in the business of furnishing light, heat, and power to the inhabitants of said city. "What we have contended, and do contend," say counsel, "is, that the City has no power or authority to construct such a plant, and to take such action as the published proclamation and the ordinance passed pursuant thereto clearly show to be contemplated, and has no right to issue and sell its bonds for the purposes stated in said proclamation and ordinance, and not having such power or authority, conferred by the statute or statutes, the City is not authorized, and has no right, to undertake any such ultra vires and unauthorized action, and, therefore, has no power or authority to do so in competition with the existing power company, or otherwise, or at all."

Inasmuch as the city of Las Vegas derives its powers solely from the legislative enactment incorporating it (chapter 132, Statutes of Nevada 1911, and amendments thereto), it becomes necessary to examine the pertinent provisions of that act and of the amendments which have been made to it; for, as has been said by the supreme court of the United States, "No matter how much authority there may be in the legislature to grant a particular power, if the grant has not been made the city cannot act under it." City of Ottawa v. Carey, 108 U. S. 110, 2 S. Ct. 361, 365, 27 L. Ed. 669, at page 674.

Section 4 of subchapter 1 of c. 132 of said act of 1911, as amended (Statutes of Nevada 1935, c. 36, p. 41), provides in part that the city "may purchase, receive, hold and acquire, manage and enjoy, operate and maintain, municipal water works and municipal power plants, electrical or otherwise, or other public utility."

Clause 5 of section 31 of subc. 2 of said act of 1911, as amended (Statutes of Nevada 1935, c. 36, pp. 43–46), which deals with the power of the city to borrow money and limits the amount of outstanding bonds, warrants, certificates, script, etc., provides in part that: "Nothing herein contained shall be construed to restrict the powers of said city as to taxation, assessment, borrowing money, contracting debts or loaning its credit for procuring supplies of water, municipal water works, municipal power plants, electrical or otherwise, or other public utility. * * * The board shall have the power to acquire or establish municipal water works, municipal power plants, or any public utility, only in the manner herein provided. The board shall issue a proclamation which shall set forth briefly the supply of water, municipal water works, the municipal power plant, or other public utility proposed to be acquired or established."

Clauses 34, 36, 37, and 38 of said amended section 31, which, except for inconsequential changes in clause 36, remain as enacted in 1911, provide that the city shall have power—

"34. To provide for the lighting, sprinkling and cleaning of the streets, alleys, avenues, sidewalks, crosswalks, parks and public grounds. * * *

"36. To contract with, authorize or grant to any person, company or association a franchise to construct, maintain, and operate gas, electric or other lighting works in the city, and to give such persons, company or association the privilege of furnishing light for the public buildings, streets, sidewalks and alleys of said city.

"37. To provide for the lighting of streets, laying down of gas pipes and erecting of lamp posts; to regulate the use of gas, natural gas and electric and other lights and electric power, and to regulate the inspection thereof.

"38. To construct and maintain waterworks, gasworks, electric-light works, street railways, or bathhouses, or to authorize the construction and maintenance of the same by others, or to purchase or lease any or all of said works from any person or corporation."

Appellants suggest that even without the 1935 amendments it might well be held, in view of the language of said clause 38, that the city would have power to acquire a power plant and furnish the inhabitants, as well as the city's public places with electrical energy. Were it to be conceded that under said clause 38 the city would have power to furnish *electric lights* to the inhabitants and private places of business in Las Vegas, the rules of strict construction make it doubtful, to say the least, whether the city would have power, by virtue of that clause, also to furnish them with electrical energy for motors and heating. Appellants, however, rely chiefly upon amended section 4 of subc. 1 and amended clause 5 of section 31, subc. 2 (Stats. of Nevada 1935, c. 36, pp. 41, 43). It thus becomes necessary to examine into the meaning of some of the language used in the 1935 amendments, particularly the phrases "public utility" and "municipal power plants," and the word "acquire."

The definition of the term "public utility" given

in section 6106 N. C. L. is confined to the particular classes of public utilities dealt with in the public service commission act of March 28, 1919, as amended (sections 6100–6146 N. C. L.). Said definition is not applicable to the term "public utility" as used in the statutes heretofore quoted in this opinion. Payne v. City of Racine, 217 Wis. 550, 259 N. W. 437; Kitchens v. City of Paragould, 191 Ark. 940, 88 S. W. (2d) 843.

Municipal gas plants (Pierce v. City of Hamilton, 40 Ohio App. 338, 178 N. E. 432); public parks (Schmoldt v. City of Oklahoma City, 144 Okl. 208, 291 P. 119; city-owned bathing pools (City of Belton v. Ellis [Tex. Civ. App.], 254 S. W. 1023); municipally-owned street railways (Platt v. City and County of San Francisco, 158 Cal. 74, 110 P. 304, at pages 306, 307); municipal water and light plants (Cary v. Blodgett, 10 Cal. App. 463, 102 P. 668); municipal sewer systems, fuel yards, auditoriums, cemeteries, and even golf links (Capen v. Portland, 112 Or. 14, 228 P. 105, 35 A. L. R. 589 and note), have been held to be public utilities.

In Thompson-Houston Electric Co. v. City of Newton (C. C.), 42 F. 723, a statute conferring power to establish and maintain electric light plants, or to authorize the erection of the same and providing that the city should have power to issue bonds for the purpose of establishing electric plants, was held by the court to authorize the city to erect an electric plant for furnishing lights for use in the houses and stores of the inhabitants as well as for lighting the streets and public places of the city.

In Platt v. City and County of San Francisco, supra, a taxpayer sought to enjoin the city from proceeding to issue and sell "Geary Street Railway Bonds." The charter provided that: "The city and county shall have power to acquire, construct or complete any public utility from funds derived from taxes levied for that purpose." In its opinion the court said: "The only question, then, is as to the meaning of the term 'public utility' as used in this section and in the other sections

of the same article. The term is certainly broad enough to include a street railroad; is one that would ordinarily be understood as including any such utility as is employed in the rendition of quasi public service, such as waterworks, gasworks, a telephone system, street railroads, etc."

Cary v. Blodgett, 10 Cal. App. 463, 102 P. 668, 669, was an action brought against the city of Lodi, a municipality of the sixth class, to enjoin it from issuing and selling bonds for a combined plant for supplying the city and its inhabitants with water and electric light. The specific grant of power provided that: " 'The board of trustees of said city shall have power: * * * (3) To contract for supplying the city or town with water for municipal purposes, or to acquire, construct, repair and manage pumps, aqueducts, reservoirs or other works necessary or proper for supplying water for the use of such city or the inhabitants or for irrigating purposes therein. * * * (13) To acquire, own, construct, maintain and operate street railways, telephone and telegraph lines, gas and other works for light and heat; public libraries, museums, gymnasiums, parks and baths.' " The court held that these provisions authorized the city to construct and maintain a plant to supply its inhabitants with water *and light* for their private use, as well as for public purposes.

In Christensen v. City of Fremont, 45 Neb. 160, 63 N. W. 364, 365, the court held that a grant of power authorizing the establishment and maintenance of a "system of electric lights for such city" conferred upon the city the power to supply light to private buildings.

In the case of Jacksonville Electric Light Co. v. Jacksonville, 36 Fla. 229, 18 So. 677, 682, 30 L. R. A. 540, 51 Am. St. Rep. 24, the court held that power "to provide for lighting the city by gas or other illuminating material, or in any other manner," authorized the city to supply its inhabitants with electric light for use in their private residences and houses as well as to light the streets and public places of the city.

In Smith v. Mayor of Nashville, 88 Tenn. 464, 12 S. W. 924, 925, 7 L. R. A. 469, the power "to provide the city with water by water-works" was held to authorize the city to furnish its inhabitants with water.

■ In the light of the foregoing, we are clearly of opinion that the legislature, in conferring upon the city of Las Vegas the power to "purchase, receive, hold and acquire, manage and enjoy, operate and maintain, municipal water works and municipal power plants, electrical or otherwise, or other public utility," intended to confer and did confer, amongst other powers, that of furnishing electrical energy to the inhabitants of the city in their homes and places of business. This conclusion is supported by the views expressed by Doctor Pond in his work on Public Utilities.

But we are now confronted with another question. The proclamation published by the board of city commissioners set forth that it was proposed to acquire or *construct* a municipal power distribution system; but the grant of power in amended section 4 of subc. 1 of the act incorporating the town of Las Vegas does not use the word "construct." We are thus called upon to decide whether the words "may purchase, receive, hold and acquire, manage and enjoy, operate and maintain" empower the city of Las Vegas to *construct* a municipal power plant.

In Clark v. City of Los Angeles, 160 Cal. 30, 116 P. 722, 729, the supreme court of California was called upon to construe a charter provision authorizing the city of Los Angeles to supply the municipality and its inhabitants with electricity. The court, on rehearing, said: "It is not correct to say that the expression, 'acquiring and constructing a certain revenue producing municipal improvement,' particularly described, is necessarily a statement of dual purpose. The word 'acquire' has a broad meaning, including both purchase and construction. The expression does not indicate the purpose of acquiring two systems, one by purchase, the other by construction. In connection with the context,

it means the acquisition of but one system, including the purchase of such property and the erection of such structures as may be necessary to accomplish that purpose."

The construction placed upon the word "acquire" by the supreme court of California in Clark v. City of Los Angeles, supra, was quoted with approval by the supreme court of Idaho in King v. Independent School District, 46 Idaho, 800, 272 P. 507.

In Hartigan v. City of Los Angeles, 170 Cal. 313, 149 P. 590, 591, the proposition on the ballot, in an election to authorize the city of Los Angeles to issue bonds for a municipal improvement, stated that $1,250,000 was to be used for the "construction or acquisition of electric generating works." In the course of its opinion the court said that the city "could accomplish the 'acquisition' of an improvement by buying an entire plant, by constructing an entirely new one, or by completing one which it had partially constructed."

In Verner v. Muller, 89 S. C. 117, 71 S. E. 654, 655, the supreme court of South Carolina had under consideration "An act to provide for free bridges across the Congaree and Broad rivers in this state, between Columbia township in Richland county and the county of Lexington, the acquisition thereof by said Columbia township, and the issue of bonds, * * * for the purpose of such acquisition." In its opinion the court said: " 'Acquisition' is the act of getting or obtaining something, which may be already in existence, or may be brought into existence through the means employed to acquire it. A bridge may be acquired by construction as well as by purchase."

■ The word "establish" is not used in the grant of power contained in amended section 4 of subc. 1 of said act of 1911. It does occur, however, several times in said amended clause 5 of section 31, subc. 2, of said act. In said clause 5 we find the following sentence, already quoted herein: "The board shall have the power to acquire or establish municipal water works, municipal

power plants, or any public utility, only in the manner herein provided." On page 44 of the 1935 Statutes of Nevada, at the end of the paragraph from which we have just quoted, we find also the following provision: *"provided further, however,* that even though no such petition be filed, or if at such election the question is carried by such majority vote, the said board may, in its discretion, abandon and discontinue all such proceedings to acquire or establish such municipal water works, municipal power plant, electrical or otherwise, or other public utility, upon adoption of a resolution to the effect that such board does not at such time deem it to the best interests of said city to acquire or establish such municipal water works, municipal power plant, electrical or otherwise, or other public utility."

It is proper that we should consider the meaning of the word "establish," as used in said clause 5, in endeavoring to arrive at the proper construction to be placed upon the grant of power in said amended section 4.

In Iowa Service Co. v. City of Villisca, 203 Iowa, 610, 213 N. W. 401, the electors of the city voted to incur an indebtedness for the establishment of a light and power plant for the municipality, and voted to issue bonds therefor in the sum of $75,000. The petition for the call of an election, instead of stating in the words of the statute that a power plant could not be "purchased, erected, built or furnished within the limit of one and one-quarter" mill levy, stated that such plant could not be *established* within such limit. The court held that the word "established" was the legal equivalent of "purchased, erected, built or furnished."

In Caldwell v. City of Alton, 33 Ill. 416, 75 Am. Dec. 282, where the city charter provided that its common council "shall have the power to establish and regulate markets," the court said: "The power, therefore, to establish and regulate markets, includes the power to purchase the site and the erection of the necessary buildings and stalls upon it, and, when provided, to adopt such rules in regard to it, and to the business to be there

transacted, as may be deemed reasonable and just."

In People ex rel. Reynolds v. Atchison, T. & S. F. Ry. Co., 300 Ill. 415, 133 N. E. 250, the court had under consideration a tax levied under the detention home act (Laws 1907, p. 59, as amended by Laws 1919, p. 729 [see Smith-Hurd, Ill. Stats. c. 23, sec. 308 and note]) for the establishment and maintenance of a county detention home. A distinction was made between the terms "establish" and "maintain," the court saying: "The terms 'establish' and 'maintain' do not mean one and the same thing. The term 'establish' must be given its ordinary definition, in the absence of language showing that a special meaning is intended. To establish means to create, to institute, to build. While a tax levied under the act for the establishment of a detention home would include purchasing, erecting, leasing, and otherwise providing, and such tax could be used to enlarge, improve, or add to such home, such purpose must not be confused with that of maintenance."

In Ketchum v. City of Buffalo, 21 Barb. (N. Y.) 294, the supreme court of New York construed the words "to establish and regulate markets in the city" in the charter of the city of Buffalo, and held that said language conferred upon the city the power to purchase land and to erect buildings thereon for market purposes. The court said: "The authority to any one to establish a thing, is an authority to take the proper measures to produce, accomplish or bring into existence the thing."

In Georgia Public Service Commission v. Georgia Power Co., 182 Ga. 706, 186 S. E. 839, 840, the word "establish," within a statute authorizing the public service commission to require public service companies to establish and maintain public service facilities which are reasonable and just, was held to include in its meaning the extension of existing service and the bringing into being of new service and facilities in connection therewith. In that case the word "establish" was defined, "to bring into being; to build; to constitute;

to create; to erect; to form; to found; to found and regulate; to institute; to locate; to make; to model; to organize; to originate; to prepare; to set up."

The only case we have had called to our attention or found, holding that "establish" is not used in the sense of "construct," is Village of Brockport v. Green, 39 Misc. 231, 79 N. Y. S. 416, wherein the court had under consideration the following provision in the village law: "The board of sewer commissioners of a village may establish and maintain a sewer system therein." In its opinion the court said: "The word 'establish' is not used in the sense of to construct, and that is not its meaning etymologically."

Besides the word "establish," we also find the word "procuring" in said amended clause 5, in the following provision already quoted in this opinion: "Nothing herein contained shall be construed to restrict the powers of said city as to taxation, assessment, borrowing money, contracting debts or loaning its credit for procuring supplies of water, municipal water works, municipal power plants, electrical or otherwise, or other public utility." One of the definitions of the word "procuring" in Webster's New International Dictionary is, "to obtain by any means." This word does not occur in the grant of power in said amended section 4, but, like the word "establish," has received our consideration in placing a proper interpretation upon said grant of power.

■ The foregoing authorities leave no substantial doubt in our mind that the legislature, in the said amendments of 1935, intended to and did confer upon the city of Las Vegas the power to construct a municipal power plant, as well as to acquire one in other ways, such as by purchase.

It is our opinion, therefore, that the general demurrer to plaintiff's first cause of action should have been sustained.

Respondent contends that the demurrers to his amended second and third causes of action should have

been overruled by the district court; but, according to appellants, the question whether there was error in sustaining said demurrers is one which this court is without power to consider. They take the position that the only matters of which we have jurisdiction are those presented by them on this appeal. They say that the action of the lower court in sustaining the demurrers to, and dismissing, the amended second and third causes of action constituted a final judgment adverse to plaintiff, from which he could have appealed. Furthermore, in line with their contention that only the questions raised by them on this appeal can be considered, they claim that even if the sustaining of said demurrers and dismissal of said two amended causes of action were not appealable, this court is nevertheless without power, on this appeal, to decide whether the district court committed error in taking said action.

The rulings of the district court sustaining defendants' amended second and third causes of action, and dismissing the same, were intermediate orders, not a final judgment. Salchert v. Rice, 47 Idaho, 422, 276 P. 305. The final judgment was the court's decree enjoining defendants from proceeding to issue the proposed bonds.

The order sustaining said demurrers and dismissing said causes of action was not appealable. Statutes of Nevada 1935, c. 90, p. 197, sec. 10; Chartz v. Cardelli, 52 Nev. 278, 286 P. 125.

Furthermore, our statute contemplates appeal by aggrieved persons only. Statutes of Nevada 1935, c. 90, p. 196, sec. 8; Warren v. Wilson, 47 Nev. 259, 262, 220 P. 242. And see 2 Am. Jur., p. 943, sec. 152.

Section 12 of the 1935 new trials and appeal act, Statutes of Nevada 1935, c. 90, p. 198, reads as follows: "Upon an appeal from a judgment, the court may review the decision, and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment, or which substantially affects the rights of a party, which comes within the

specifications of error and record on appeal or is embraced in the bill of exceptions. The provisions of this section do not authorize the court to review any decision or order from which an appeal might have been taken."

It is true that Maher v. Swift, 14 Nev. 324, Moresi v. Swift, 15 Nev. 215, and Dennis v. Caughlin, 22 Nev. 447, 41 P. 768, 29 L. R. A. 731, 58 Am. St. Rep. 761, tend to support appellants' contention that only such errors as they complain of can be considered on this appeal. (Dennis v. Caughlin, supra, is cited in 3 Am. Jur., at pages 362 and 403). But said section 12 of the 1935 new trials and appeal act, and the case of In re Parrott's Estate, 45 Nev. 318, 329, 203 P. 258, convince us that, in the instant case, respondent is entitled to have this court decide whether there was error in sustaining defendants' demurrers to, and dismissing, his amended second and third causes of action. See, also, 3 Am. Jur. pp. 403–406, sec. 866.

It may be observed here that orders sustaining demurrers are deemed excepted to (section 8874 N. C. L.); also that the district court's rulings complained of by respondent involved the merits, substantially affected the rights of respondent, come within the record on appeal, are embraced in the bill of exceptions, and are specified as errors in respondent's answering brief.

The second alleged cause of action presents two questions for our consideration: First, does the ordinance enacted by the defendants conform in all respects with their previously published proclamation? Second, would the proposed bond issue be in violation of the provisions of section 6085 N. C. L., to be later quoted herein?

■ Amended clause 5 of section 31 of subc. 2 of the act of incorporation provides, in part, that to acquire or establish a public utility, the board shall issue and publish a proclamation which shall set forth briefly "the proposed bonded indebtedness to be incurred therefor, the terms, amount, rate of interest, and time within

which redeemable, and on what fund." At a later meeting the board must enact an ordinance "which shall conform in all respects to the terms and conditions of the previously published proclamation," unless, in the meantime, a petition be presented to the board, signed by a certain percentage of the qualified electors of the city, asking for a special election upon the question whether or not the proposed ordinance shall be passed. If such petition be presented, the ordinance shall not be enacted unless and until such election shall have been called, held, and carried by a majority of the votes cast.

The proclamation in the instant case proposes to issue "interest bearing coupon general obligation bonds" and further sets forth that such bonds "shall be redeemable from a fund to be created for that purpose from the sale of power distributed over such system." No petition for a special election having been presented, the board enacted an ordinance for the issuance of 250 "general obligation bonds." According to the ordinance, the bonds are to be made "a legal and effective general obligation against the City of Las Vegas"; the proceeds from the sale of the bonds are to be placed in a city fund designated as the "City power bond fund"; this fund is to be used for the purpose of "establishing, creating or acquiring by purchase or through construction" a municipally owned power plant. * * *" Section 6 of the ordinance reads: "When such plant shall be acquired as herein provided, the Board of City Commissioners shall charge a price for power distributed over such system sufficient, in addition to the operating costs, to pay the interest upon the said bonds as the same shall become due, and in addition thereto, a sum shall be collected by the Board of City Commissioners from the sale of such power sufficient to redeem and retire the said bonds upon their respective maturity dates." In section 7 of the ordinance it is provided, inter alia, that "in the event that the fund created from the sale of power distributed over such system shall be insufficient to pay the principal upon and redeem the said

bonds and to pay the interest thereon as the respective amounts become due, then and in such event, the deficiency shall be paid by the Treasurer of the City of Las Vegas from the general fund of the city, and each of the bonds issued under the authority of this ordinance shall contain a provision to that effect."

Respondent contends that the ordinance does not conform in all respects to the terms and conditions of the proclamation for the reason that the latter makes the bonds redeemable from a fund to be created for that purpose from the sale of power, while the ordinance goes further and provides that if the proceeds from the sale of power be insufficient to pay the principal or interest, the deficiency shall be paid from the general fund of the city.

While entertaining some doubt on this question, the conclusion we have arrived at is that any lack of conformity of the ordinance with the proclamation consists in the choice of different words which, however, have the same meaning. In the case of City of Eugene v. Willamette Valley Co., 52 Or. 490, 97 P. 817, at page 821, the court says: "The word 'general' is used in the clause quoted to distinguish it from 'special,' and when so applied to qualify the word 'obligation,' the phrase employed means a municipal debt, for the payment of which provision must be made by devoting funds raised by taxation, thereby appropriating in discharge thereof a pro rata share of the burden upon all property in a specified district that is subject thereto. * * * An examination of section 112 of the charter as amended will show that a special fund is provided for the payment of the water bonds at maturity and of the interest as it accrues; but, as such debt is by express words also made a 'general obligation' of the city, the two provisions adverted to must be construed in pari materia. Interpreting these clauses in such manner, it follows that the residue of the special fund, after the payment of the charges specified, must be applied in the manner

indicated; but if there should, at any time, be a shortage in the resources mentioned to meet the payment of the interest on the water bonds as the installments severally accrue, or insufficient annually to set aside the required amount of money as a sinking fund so provided for, recourse must be had to the general fund to make up the deficiency." The proclamation expressly sets forth that the bonds are to be general obligations. This, with the further statement that the bonds shall be redeemable from a fund to be created from the sale of power, is, in substance, equivalent to statements set forth in the ordinance to the effect that the bonds are to be a general obligation against the city, and that if the proceeds from the sale of power shall be insufficient to pay the principal upon and redeem the bonds and to pay the interest thereon as the respective amounts become due, then the deficiency shall be paid from the general fund of the city.

We shall now consider the question whether the proposed bond issue would be invalid under section 6085 N. C. L., which reads as follows: "Hereafter all bonds, including refunding bonds issued under lawful authority by any county, city, town, school district, or municipal corporation, shall be serial in form and maturity and numbered from one upwards consecutively. Interest on all such bonds shall be payable either annually or semiannually, as may be set forth in the act of the officers of the issuing municipal corporation. The various annual maturities shall commence not later than the third year after the date of issue of such bonds; all such bonds shall be redeemed in equal annual installments; *provided, however,* that the first installment may be for a greater or lesser amount than the remaining installments."

The aforesaid section is section 1 of "An Act relating to bonds issued by counties, cities, towns, school districts, and other municipal corporations, and repealing all acts and parts of acts in conflict therewith," approved

March 23, 1927 (Stats. 1927, c. 110, p. 194). We are here concerned with the last portion of the section, which requires that "all such bonds shall be redeemed in equal annual installments; *provided, however,* that the *first* installment may be for a greater or lesser amount than the remaining installments." In the case at bar the proposed bonds are to be redeemed in equal installments of $30,000, except the *last* installment, which is $40,000.

■ In State v. Allen, 55 Nev. 346, 34 P. (2d) 1074, this court held a bond issue invalid because it provided for redemption of the bonds in unequal installments. Appellants do not question the correctness of that decision, nor do they attack the constitutionality of said section 6085 N. C. L. Their contention is that this section does not apply in the instant case, for two reasons: First, because section 6 of the aforesaid municipal bonds act (section 6090 N. C. L.) provides that said act "shall not apply to public utility bonds payable wholly from the earnings of such utility"; and, as they contend, the proposed bonds would be payable wholly from the earnings of the municipal power plant. Second, because said municipal bond act of 1927 has been entirely superseded, so far as the proposed bond issue is concerned, by the act of March 13, 1935, amending the Las Vegas incorporating act (Statutes of Nevada 1935, c. 36 pp. 41–60), and particularly amended clause 5 of section 31 of subc. 2 of said incorporating act (Statutes of Nevada 1935, c. 66, pp. 43–46).

It is plain that the proposed bonds would be public utility bonds, but we cannot agree with appellants that they would be payable wholly from the earnings of such utility. The court cannot disregard the word "wholly," and we are convinced that, although the proclamation states that the bonds are to be redeemable from a fund to be created for that purpose from the sale of power distributed over such system, they would not be payable *wholly* from the earnings of the power plant, because

they would be general obligation bonds, and if the proceeds from the sale of power should be insufficient to redeem them the deficiency would have to be paid from the general fund of the city. General obligation bonds create a debt against the city, whereas bonds payable wholly from the earnings of a public utility do not. If the holders of the proposed bonds would have a claim solely on the net revenues of the power plant, they would be payable wholly from its earnings. The following are a few of the authorities where bonds and other liabilities of this type are mentioned: Shields v. Loveland, 74 Colo. 27, 218 P. 913; Franklin Trust Co. v. Loveland (C. C. A.), 3 F. (2d) 114; Bell v. Fayette, 335 Mo. 75, 28 S. W. (2d) 356; City of Houston v. Allred, 123 Tex. 334, 71 S. W. (2d) 251; Twichell v. Seattle, 106 Wash. 32, 179 P. 127; Shorts v. Seattle, 95 Wash. 531, 164 P. 239; McQuillin, Municipal Corporations (2d ed.), vol. 6, sec. 2387; Pond, Public Utilities (4th ed.), vol. 1, sec. 102. If it is true that the proposed bonds might be redeemed wholly from the net proceeds of the power plant, it is likewise true that redemption might have to be made in part, at least, from the general fund of the city. The credit of the city would be pledged to secure the payment of the bonds, and the holders of the bonds, besides looking to the proceeds of the plant and having a lien thereon, would be entitled legally to hold the city itself liable for their redemption.

The second reason given by appellants in support of their contention that section 6085 N. C. L. is not applicable to the city of Las Vegas, is that the 1935 amendments to its charter set up a new, full, and complete method for acquiring and establishing municipal public utilities in said city, different from the method set forth in said municipal bond act of 1927. It was upon this ground that the district court sustained defendants' demurrer to plaintiff's second cause of action. Respondent takes the position that said municipal bond act of 1927 has not been superseded by the 1935 amendments

to the Las Vegas charter. It thus becomes necessary to closely scrutinize these statutes.

Section 1 of the municipal bond act has already been quoted (section 6085 N. C. L.). Section 2 (section 6086 N. C. L.) makes provision for an annual tax levy, sufficient to meet the payments of principal and interest on municipal bonds. Section 3 (section 6087 N. C. L.) provides that before any bonds be offered for sale, the corporate authorities issuing them shall designate the maximum rate of interest such bonds shall bear. This section goes on to state that when a vote of the electors shall have been taken on the question of the issuance of such bonds and the proposition submitted to the electors shall have specified the maximum rate of interest to be borne by said bonds, no increase of such maximum rate of interest shall be made by the corporate authorities. Said section 3 further provides that all such bonds shall be sold at public sale, and that a notice of the sale shall be published in a newspaper for a certain length of time, and a copy mailed to the state board of finance. The notice must specify the maximum rate of interest such bonds shall bear, and further sets forth what the bids must specify. The bonds are to be sold to the highest bidder and no bound is to be sold at less than par and accrued interest, nor is any discount or commission to be allowed or paid on the sale of such bonds. Section 5 of said act, as amended (Statutes of Nevada 1933, c. 50, pp. 45, 46 [N. C. L. sec. 6089]), provides that bonds issued under the act shall not run for a longer period than twenty years from the date of issue, and shall, as near as practicable, be issued for a period which shall be equivalent to the life of the improvement to be acquired by the use of the bonds. Section 6, as we have already seen, states that the act shall not apply to public utility bonds payable wholly from the earnings of such utility. There are other provisions in the act, but the foregoing are deemed sufficient for the purposes of this discussion.

The first four sentences of amended clause 5 of section 31 of subc. 2 of the city charter (incorporating act of 1911), from which some quotations have already been made in connection with other questions involved on this appeal, read as follows: "To borrow money on the credit of the city for corporation purposes and to issue warrants and bonds therefor in such amounts and forms and on such conditions as the board of commissioners shall determine; and the board may secure the payment of any bonds of the city by making them a preferred lien against the real or other property of the city; *provided,* that said city shall not issue nor have outstanding at any time bonds to an amount in excess of 20 percent of the total valuation of the taxable property within its limits, as shown by the last preceding tax list or assessment roll; nor shall said city have issued or outstanding at any time warrants, certificates, scrip or other evidence of indebtedness, excepting the bonded indebtedness, in excess of 2 percent of said assessed valuation; *and provided further,* that nothing herein contained shall be construed to restrict the powers of said city as to taxation, assessment, borrowing money, contracting debts or loaning its credit for procuring supplies of water, municipal water works, municipal power plants, electrical or otherwise, or other public utility. The said board shall provide for the payment of interest on such bonds as the same shall become due, and for a sinking fund for the payment of the principal within twenty years after issuing same. The board shall have the power to acquire or establish municipal water works, municipal power plants, or any public utility, only in the manner herein provided. The board shall issue a proclamation which shall set forth briefly the supply of water, municipal water works, the municipal power plant, or other public utility proposed to be acquired or established, the estimated cost thereof as shown by the report provided by the board and mayor, or an engineer or party theretofore appointed by the board for that

purpose, the proposed bonded indebtedness to be incurred therefor, the terms, amount, rate of interest, and time within which redeemable, and on what fund." Said amended clause 5 then provides for the publication of the proclamation, the holding of a special election if petitioned for, and the enactment of an ordinance conforming to the previously published proclamation—the statute providing that such ordinance shall be enacted if no petition be presented for a special election, and further providing that if such petition be presented, no ordinance shall be enacted unless such special election be held and carried by a majority of the votes cast. This clause also gives the board power to call and hold such special election whether petitioned for or not, and contains the further provision that if at such election the question is carried by a majority vote, or even though no petition for a special election be filed, the board may, nevertheless, in its discretion, by resolution, abandon and discontinue all proceedings to acquire or establish the municipal public utility when it is deemed to the best interests of the city not to acquire or establish the same.

Section 8 of the 1935 act (Statutes of Nevada 1935, p. 60), amending the 1911 act incorporating the town of Las Vegas, provides that "all acts or parts of acts in conflict herewith are hereby repealed." Said amendatory act of 1935 makes no express reference to the municipal bonds act of 1927.

Respondent does not challenge the constitutionality of those portions of the 1935 amendatory act relied upon by appellants, further than to call our attention to section 8 of article 8 of the state constitution (section 138 N. C. L), which provides in part that: "The legislature shall provide for the organization of cities and towns by general laws and shall restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, except for procuring supplies of water." It is our opinion that this constitutional provision does not invalidate said amended clause

5, or any part of it. Kornegay v. City of Goldsboro, 180 N. C. 441, 105 S. E. 187, at page 190.

In our endeavor to ascertain whether said amended clause 5 entirely supersedes, so far as the proposed bond issue is concerned, the municipal bonds act of 1927, and if not, whether said clause 5 supersedes that portion of section 1 of said act of 1927 which requires redemption of municipal bonds in equal annual installments except as to the first installment, we must bear in mind that our chief concern is to learn the intent of the legislature. Thorpe v. Schooling, 7 Nev. 15, at pages 17, 18; State v. Ducker, 35 Nev. 214, at page 223, 127 P. 990; Gill v. Goldfield Consol. M. Co., 43 Nev. 1, at page 7, 176 P. 784, 184 P. 309; Carson City v. Board of County Commissioners, 47 Nev. 415, at page 422, 224 P. 615; In re James, 99 Vt. 265, 132 A. 40. Rules for statutory construction are merely aids in the ascertainment of the legislative intent. State v. Ducker, supra. Some of those rules, pertinent to the statutes we are considering, will now be mentioned.

An amendment of an existing charter supersedes, within the corporate limits and as to matters of purely municipal concern, such, and only such, provisions of a general law as are inconsistent with the provisions of the new amendment. Presson v. Presson, 38 Nev. 203, at page 209, 147 P. 1081; Ex Parte Garza, 28 Tex. App. 381, 13 S. W. 779, 19 Am. St. Rep. 845, at page 848; 43 C. J. 167, sec. 153, note 33; State v. Ducker, supra, 35 Nev. 214, at page 224, 127 P. 990; State v. Millis, 81 Mont. 86, 261 P. 885, at page 890; Franzke v. Fergus County, 76 Mont. 150, 245 P. 962, at page 965; State v. Gehner, 315 Mo. 1126, 280 S. W. 416, 418; 59 C. J. 916, sec. 517.

Clause 5 does not expressly supersede the act of 1927, or any portion thereof. The question is, therefore, whether it impliedly supersedes said act, or any part of it. The question is not one relating to "repeal," as that word is ordinarily used, but we think the rules governing repeal by implication are applicable.

■ Repeals by implication are not favored, and the intent of the legislature to have a local law control a general one must be clearly evinced by appropriate language. Thorpe v. Schooling, supra; Estate of David Walley, 11 Nev. 260, at page 264; State v. Ducker, supra, 35 Nev. 214, at pages 221, 222, 127 P. 990; State ex rel. Abel v. Eggers, 36 Nev. 372, at page 380, 136 P. 100; Dotta v. Hesson, 38 Nev. 1, at page 3, 143 P. 305; Presson v. Presson, supra; Kondas v. Washoe County Bank, 50 Nev. 181, at page 190, 254 P. 1080; Nordyke v. Pastrell et al., 54 Nev. 98, at page 105, 7 P. (2d) 598; Quinby v. Public Service Comm., 102 Misc. 357, 169 N. Y. S. 976; State v. Millis, supra; State v. Brown, 154 S. C. 55, 151 S. E. 218, at page 220, 221; Arsenal School District v. Consol. Town, 120 Conn. 348, 180 A. 511, at page 517; 59 C. J. pp. 905, 907–909, 913–916, 936, 1051, 1052, 1056, 1057.

■ Where two statutes are flatly repugnant, the later, as a general rule, supplants or repeals the earlier. Thorpe v. Schooling, supra, 7 Nev. 15, at page 17; Tilden v. Esmeralda County, 32 Nev. 319, 325, 107 P. 881; State v. Ducker, supra, 35 Nev. 214, at page 224, 127 P. 990; Presson v. Presson, supra, 38 Nev. 203, at page 208, 147 P. 1081.

■ A general law will not be held to be repealed or modified by implication by a subsequent special law, unless the subsequent special act is so clearly in conflict with the existing general law that both cannot stand. Thorpe v. Schooling, supra, 7 Nev. 15, at pages 17, 18; Estate of David Walley, supra, 11 Nev. 260, at page 264; State v. Ducker, supra, 35 Nev. 214, at page 222, 127 P. 990; State ex rel. Abel v. Eggers, supra, 36 Nev. 372, at page 380, 136 P. 100; Dotta v. Hesson, supra, 38 Nev. 1, at page 3, 143 P. 305; Presson v. Presson, supra, 38 Nev. 203, at page 209, 147 P. 1081; Carson City v. Board of County Commissioners, supra, 47 Nev. 415, at page 422, 224 P. 615; Nordyke v. Pastrell, supra, 54 Nev. 98, at page 107, 7 P. (2d) 598; State v. Millis, supra, 81 Mont. 86, 261 P. 885, at page

890; State v. Gehner, supra, 315 Mo. 1126, 280 S. W. 416, at page 418; State v. Brown, supra, 154 S. C. 55, 151 S. C. 218, at page 221; Arsenal School District v. Consol. Town, supra, 120 Conn. 348, 180 A. 511, at page 517; 43 C. J. 167, 199; 59 C. J. 907–909, 913, 917, 936, 937.

◼ Where express terms of repeal are not used, the presumption is always against an intention to repeal an earlier statute, unless there is such inconsistency or repugnancy between the statutes as to preclude the presumption, or the later statute revises the whole subject-matter of the former. State v. Donnelly, 20 Nev. 214, 19 P. 680; Presson v. Presson, supra, 38 Nev. 203, at pages 208, 209, 147 P. 1081; Carson City v. Board of County Commissioners, supra, 47 Nev. 415, at page 422, 224 P. 615; Kondas v. Washoe County Bank, supra, 50 Nev. 181, at page 190, 254 P. 1080; Rorick v. Dalles City, 140 Or. 342, 12 P. (2d) 762, at pages 763, 764; 59 C. J. 909, sec. 511.

◼ Where a statute or city charter provides a new, full, and complete scheme for the acquisition of municipal improvements, a prior general public improvements act is superseded, being inconsistent. Thorpe v. Schooling, supra, 7 Nev. 15, at page 18; Gill v. Goldfield Consol. M. Co., supra, 43 Nev. 1, at pages 7, 8, 176 P. 784, 184 P. 309; Carson City v. Board of County Commissioners, supra, 47 Nev. 415, at page 425, 224 P. 615; McHugh v. City and County of San Francisco, 132 Cal. 381, 64 P. 570.

◼ Where one statute deals with a subject in general and comprehensive terms, and another deals with another part of the same subject in a more minute and definite way, the special statute, to the extent of any necessary repugnancy, will prevail over the general one. Norton-Johnson Buick Co. v. Lindley, 173 Okl. 93, 46 P. (2d) 525, at page 527; In re Stevenson's Estate, 87 Mont. 486, 289 P. 566, at page 570; Franzke v. Fergus County, supra, 76 Mont. 150, 245 P. 962, at page 965; State v. Gehner, supra, 315 Mo. 1126, 280 S. W. 416, at

page 418; In re James, supra, 99 Vt. 265, 132 A. 40, at page 43.

■ ■ The provisions of general and special acts must be harmonized when reasonably possible. State v. Rogers, 10 Nev. 319, at page 321; Ex Parte Ah Pah, 34 Nev. 283, at page 292, 119 P. 770; State v. Ducker, supra, 35 Nev. 214, at page 224, 127 P. 990; Abel v. Eggers, supra, 36 Nev. 372, at page 381, 136 P. 100; Dotta v. Hesson, supra, 38 Nev. 1, at page 3, 143 P. 305; Presson v. Presson, supra, 38 Nev. 203, at pages 208, 209, 147 P. 1081; Carson City v. Board of County Commissioners, supra, 47 Nev. 415, at page 422, 224 P. 615; Wainwright v. Bartlett, 51 Nev. 170, at pages 177, 178, 271 P. 689, 62 A. L. R. 78; Bishop v. Musick Plating Works, 222 Mo. App. 370, 3 S. W. (2d) 256, at page 259; Franzke v. Fergus County, supra, 76 Mont. 150, 245 P. 962, at page 965.

■ It will be presumed that the legislature, in enacting a statute, acted with full knowledge of statutes already existing and relating to the same subject. Gill v. Goldfield Consol. M. Co., supra, 43 Nev. 1, at page 5, 176 P. 784, 184 P. 309; Rorick v. Dalles City, supra, 140 Or. 342, 12 P. (2d) 762, at page 763; State v. Dunais, 120 Conn. 562, 181 A. 721, at page 723; 59 C. J. 909, sec. 511.

In the light of the foregoing rules, can we say it is clear that the statutes in question in this case conflict to such an extent, or in other words are so inconsistent and irreconcilable, that they cannot be harmonized so as to give effect to both? If appellants' contention that the 1927 act is wholly superseded by clause 5 is correct, that ends the matter. But after all, the only part of the act of 1927 with which we are specifically concerned here is that which requires municipal bonds to be redeemed in equal installments — except the first which may be greater or less than the others.

■ We have reached the conclusion that the requirement last mentioned is not applicable to the proposed bond issue, and we base that conclusion chiefly on the

language occurring in the first three and a fraction lines of said amended clause 5. By this language the legislature of 1935 expressly conferred upon the board of commissioners of the city of Las Vegas the power to borrow money on the credit of the city and to issue bonds therefor "in such amounts and forms and on such conditions as the board of commissioners shall determine." We have not been cited to any case construing the quoted words. There may be many such statutes in the various states, but the only one discovered in our research is mentioned in People vs. Chicago & N. W. Ry. Co., 308 Ill. 54, 139 N. E. 2, at page 4.

If there is doubt whether the provision requiring bonds to be redeemable in equal installments (except the first) is a matter of "amounts" or "forms," it seems clear that such a requirement is a "condition." In Dillon's Municipal Corporations (5th ed.), vol. 2, sec. 889, the author says: "The legislature in granting to a municipality power to issue its bonds *may impose such conditions* as it may choose. * * *" He cites statutes limiting the term within which bonds shall be payable; authorizing an issue of bonds "not to extend beyond ten years from the date of issuance"; "payable in not less than five nor more than thirty years from date"; and providing that bonds may be issued making part of them mature annually and running through a series of not more than twenty years from the dates of their issuance. While still dealing with the subject of *conditions,* the author cites City and County of Denver v. Hallett, 34 Colo. 393, 83 P. 1066, where the question submitted to the electors was whether the city should issue bonds maturing in not less than fifteen years nor more than thirty years, the principal to be *payable in equal installments.*

The requirement of the general statute that municipal bonds "shall be redeemed in equal annual installments; *provided, however,* that the first installment may be for a greater or lesser amount than the remaining installments" (section 6085 N. C. L.), and the grant of power

in the special statute "To borrow money on the credit of the city for corporation purposes and to issue * * * bonds therefor in such amounts and forms and on such conditions as the board of commissioners shall determine" (amended clause 5 of section 31, subc. 2 of the act incorporating the town of Las Vegas, Stats. of Nevada 1935, c. 36, p. 43), are so conflicting, inconsistent, and irreconcilable that in our opinion they cannot be harmonized, and cannot both stand. Such being the case, the special statute, being later, must prevail.

As bearing on the all-important question of the legislative intent in amending said clause 5, we call attention to the fact that the first part of the original clause 5, in the incorporating act of 1911, reads as follows: "To borrow money on the credit of the city for corporate purposes *in the manner and to the extent allowed by the statutes and the laws,* and to issue * * * bonds therefor in such amounts and forms and on such conditions as the board of commissioners shall determine." Obviously the omission of the italicized words in the 1923, 1925, 1927, 1931, and 1935 amendments (Stats. of Nevada 1923, c. 68, p. 83; 1925, c. 56, p. 78; 1927, c. 154, p. 236; 1931, c. 215, p. 378; 1935, c. 36, p. 43) was ex industria, and indicates an intention on the part of the legislature to allow the city board of Las Vegas to borrow money for corporate purposes in such manner and to such extent as the board shall determine, subject of course to constitutional provisions and those of the amended Las Vegas incorporating act itself, and regardless of other conflicting legislation, except such as would clearly show an intent to supersede said amended clause 5.

We hold that the district court did not err in sustaining defendants' demurrer to plaintiff's second cause of action.

Defendants' demurrer to plaintiff's third cause of action raises the question whether, as a condition precedent to the issuance of the proposed bonds in the

instant case, a proposal for such bond issue should have been submitted, at an election, to electors who were not real property owners or the spouses of real property owners, and also to electors who were the owners of real property or the spouses of real property owners, as required by the bond election act of March 20, 1933 (Stats. Nevada 1933, c. 95, p. 116). The provisions of this act were set out, in substance, in the case of State ex rel. Cooper v. Reese, 57 Nev. 125, 59 P. (2d) 647, and will not be repeated here. Respondent makes the point that while amended clause 5, hereinbefore referred to, is later legislation than said act of 1933, it is merely a reenactment of the 1931 statute as previously amended, insofar as the procedure for the acquiring of bonds is concerned, and insofar as the eighty-odd powers conferred upon the board of commissioners are concerned. He further contends that the general act of 1933 repealed the 1931 enactments (Stats. of Nevada 1931, c. 215, pp. 374–391) insofar as the method of determining the question of issuance of bonds is concerned, and that the reenactment of these identical provisions in 1935 did not repeal the intermediate act of 1933. With this view we cannot concur, and in our opinion the authorities cited by respondent do not support the contention. The act of 1933 cannot be reconciled with said clause 5 as amended in 1935. The two statutes are so inconsistent and repugnant that they cannot stand together, and it seems clear to us that the legislature did not intend the general act of 1933 to be applicable, in the city of Las Vegas, to such a bond issue as the one which constitutes the subject matter of this proceeding.

We think the action of the district court in sustaining defendants' demurrer to plaintiff's third cause of action was correct.

■ While it is not necessary to decide whether appellants' contention that plaintiff has no legal capacity to maintain this suit is well taken, we may state that in our opinion it is without merit.

This case would have been disposed of at an earlier date had appellants, when the case was first submitted, briefed and argued the issues of law arising out of the demurrers to plaintiff's second and third causes of action, particularly the second. Besides arguing the contention that this court is without power to consider said two causes of action, appellants, without risk of any waiver, could and should have briefed and argued the above-mentioned questions in the first instance.

The judgment appealed from is reversed, and the orders appealed from set aside. Appellants and respondent will pay their and his own costs, respectively.

ON PETITION FOR REHEARING

April 9, 1937.

*Per Curiam:*

Rehearing denied.