PETER LEMBERES AND JAMES VERNON, APPELLANTS, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 10001

October 26, 1981 634 P.2d 1219

---

[5]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in this case in place of THE HONORABLE CAMERON BATJER. Nev. Const. art. 6, § 19; SCR 10.

MANOUKIAN, J., concurred in part, dissented in part.

*Breen, Young, Whitehead, & Belding,* and *Peter A. Perry,* Reno, for Appellants.

*Richard H. Bryan,* Attorney General, Carson City; *Calvin R. X. Dunlap,* District Attorney, and *Edward B. Horn,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, BATJER, J.:

Appellants were each convicted of bribery of a public official in violation of NRS 197.020[1] and perjury in violation of NRS 199.120.[2] They were sentenced to five years on each count, plus a $5,000 fine on the bribery count. The sentences were suspended and each appellant was placed on probation for three years.

Beginning in July, 1974, the Washoe County Grand Jury conducted an investigation into the actions and conduct of public officials of the City of Sparks. Appellants James Vernon and Peter Lemberes were members of the Sparks city council. Between February 12 and April 9, 1975, Vernon and Lemberes each appeared at a number of special sessions of the grand jury and gave testimony which became the subject of the perjury charge. On April 23, 1975, the grand jury issued an "Interim Report", in which it referred evidence of possible misconduct by Vernon and Lemberes to the District Attorney.

On August 22, 1975, the District Attorney filed an information charging Vernon and Lemberes with bribery in connection with an alleged offer of money to a fellow councilman in exchange for his opposition to the granting of a gaming license. The information charged that Vernon, while a city councilman and an employee of Meadow Gold Dairies of Nevada, had solicited the business of one Sidney Doan, Jr., at the Sierra 76

[1]NRS 197.020 provides:

Every person who gives, offers or promises, directly or indirectly, any compensation, gratuity or reward to a person executing any of the functions of a public officer other than as specified in NRS 197.010, 199.010 and 218.590, with intent to influence him with respect to any act, decision, vote or other proceeding in the exercise of his powers or functions, shall be punished by imprisonment in the state prison for not less than 1 year nor more than 10 years, and may be further punished by a fine of not more than $10,000.

[2]NRS 199.120 provides:

Every person having taken a lawful oath or made affirmation in a judicial proceeding or in any other matter where, by law, an oath or affirmation is required and no other penalty is prescribed, or who willfully and corruptly makes an unqualified statement of that which he does not know to be true, or who swears or affirms willfully, corruptly and falsely in a matter material to the issue or point in question, or who suborns any other person to make such unqualified statement or to swear or affirm in such manner is guilty of perjury or subornation of perjury, as the case may be, and shall be punished by imprisonment in the state prison for not less than 1 year nor more than 10 years, and may be further punished by a fine of not more than $10,000.

Auto-truck Plaza located in Sparks. According to the information, when Vernon learned that Doan had decided against giving the account to Meadow Gold, Vernon told him that he would have difficulty getting licensed in Sparks. The information further charged that at Vernon's inducement, Lemberes offered fellow councilman Michael Schultz compensation to influence Schultz to argue and vote against a gaming license for the operation of slot machines at the Sierra 76 truck stop. It was charged that at specified grand jury appearances, Vernon and Lemberes committed perjury by willfully, corruptly and falsely denying these facts under oath.

1. Preliminarily, appellants contend that the trial court erred in denying their motion to dismiss the information on the ground that the prosecutor improperly used the grand jury as a discovery tool.

Appellants particularly specify that they do *not* challenge the right of the grand jury to turn over evidence to the prosecutor, or the prosecutor's right to make such evidence public upon court order. Appellants rely instead upon a due process argument based primarily on the analysis in United States v. Doss, 563 F.2d 265 (6th Cir. 1977). In that case, the federal court reversed judgments of conviction for perjury based upon testimony given before a grand jury regarding crimes for which the defendant had already been indicted. The court held that "substantial grand jury questioning of a secretly indicted defendant on the subject of the indictment represents prosecutional abuse which violates the due process clause of the Fifth Amendment and the right to counsel provision of the Sixth Amendment, and that such a proceeding is void." 563 F.2d at 278-79. The court pointed out that the proceedings were without constitutional, statutory or case authority because "[t]he function of the grand jury clearly terminates with the issuance of the indictment." *Id.* at 276.

This approach in *Doss* was, in turn, based upon Brown v. United States, 245 F.2d 549 (8th Cir. 1957), in which the court also reversed a perjury conviction based on testimony before a grand jury, when the record showed that the grand jury through the prosecutor

> caused the defendant to be brought before it, without subpoena or opportunity to seek and take advice, for the purpose of extracting testimony from him, with a view to prosecuting him for perjury and without any purpose of obtaining from him any evidence upon which, in whole or

> in part, it could find a true bill against anyone for any offense committed in whole or in part in Nebraska [the state in which the grand jury was sitting] . . . .

245 F.2d at 554. The court held that since such a purpose was not within the competency of the grand jury, the testimony obtained was not material to a legitimate inquiry and could therefore not form the basis of a perjury charge under the applicable federal statute. *Cf.* United States v. Icardi, 140 F.Supp. 383 (D.D.C. 1956).

Appellants contend that because the grand jury in this case did not return an indictment, *Brown* and *Doss* should be applied. Appellants' argument ignores the clear distinction between the factual settings of those cases and this one. Here, appellants make no claim that the grand jury was without authority to inquire into corruption or possible criminal activities by public officials in the city government of Sparks. *See* NRS 172.175(1)(c).

In United States v. McInnis, 601 F.2d 1319 (5th Cir. 1979), *cert. denied* 445 U.S. 962 (1980), the court reversed a dismissal of perjury charges against a former district attorney, while upholding dismissal of the underlying kidnapping charges investigated by the grand jury. The court noted that the validity of the charge on the underlying offense had no bearing on the propriety of the investigation itself. ''Because it is an investigatory agency, and because its primary function is to safeguard defendants from prosecution without probable cause, not to aid the government, the grand jury must necessarily be able to investigate activities that it might later decline to indict.'' 601 F.2d at 1327. The court refused to apply *Doss,* noting that the testimony upon which the perjury charge was based did not follow an indictment.

In United States v. Mandujano, 425 U.S. 564 (1976), the Supreme Court refused to suppress evidence of false statements given to a grand jury in a prosecution for perjury, despite a claim that they were not preceded by appropriate *Miranda* warnings. Chief Justice Burger, writing for the plurality, noted that the authority to compel the attendance and the testimony of witnesses is indispensable to the exercise of the legitimate powers of the grand jury, *id.* at 571, and that ''[i]n this constitutional process of securing a witness' testimony, perjury simply has no place whatever. Perjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings. Effective restraints against this type of egregious offense are therefore imperative.'' *Id.* at 576. The Chief Justice distinguished federal cases, such as *Brown,* voiding convictions for

perjury "where the investigatory body was acting outside its lawful authority." *Id.* at 582, n. 8. No such situation exists here.

Those cases which have held that a party named, but not indicted, by grand jury reports are entitled to have such specific references expunged, e.g., Biglieri v. Washoe Co. Grand Jury, 95 Nev. 696, 601 P.2d 703 (1979); Application of Jordan, 439 F.Supp. 199 (S.D.W.Va. 1977), are not applicable here. The course of action the grand jury may decide to follow after its investigation cannot retroactively negate the legitimacy of its investigation, carried out pursuant to its lawful authority. *Cf.* State v. Porro, 417 A.2d 573 (N.J.App. 1980) (reversing order which had dismissed indictment on ground prosecutor later questioned accused before grand jury).

We therefore reject appellants' contention that the information must be dismissed because the proceedings violated due process.

2. Appellants also contend that the trial court erred in denying their motion to dismiss the perjury count on the basis that it failed to state an offense. Appellants argue that an information charging perjury must set forth the particular words alleged to have been falsely stated. We are unable to find such a requirement in the statutes or cases from Nevada or in the cases from other jurisdictions which have been cited by appellants.

It is true that allegations of perjury which are set forth in the conclusory language of the relevant statute, without specifying the subject of the testimony or the manner in which it is alleged to be false, have been held to be insufficient to state a public offense. United States v. Slawik, 548 F.2d 75 (3d Cir. 1977); United States v. Simplot, 192 F.Supp. 734 (D.Utah 1961); Paxton v. Walters, 231 P.2d 458 (Ariz. 1951); People v. Aud, 288 N.E.2d 453 (Ill. 1972). This is merely a specific application of the general rule that an information which charges an offense solely in terms of such conclusory language does not provide adequate notice of the charges to the accused and therefore does not state a public offense. *See, e.g.,* Sheriff v. Levinson, 95 Nev. 436, 596 P.2d 232 (1979).

In this case, however, the information did specify the substance of the testimony which was alleged to be false and did contrast that with the facts which the state alleged to be true. *See, e.g.,* Ex Parte Sheldon, 44 Nev. 268, 193 P. 967 (1920).

Whether the precise testimony given did in fact contain "willful unqualified false statement[s]", Taylor v. Sheriff, 85 Nev. 505, 506, 457 P.2d 961, 962 (1969), to the effect alleged in the information, was a matter for proof at trial. *See* United States v. Brumley, 560 F.2d 1268 (5th Cir. 1977) (reversed for failure of proof). The information was not insufficient for failure to include the testimony itself.

 █

3. Regarding the trial, appellants have raised a number of contentions. We find it necessary to deal only with the issue of the admission of preliminary hearing testimony by one Ronald Averett, Vernon's superior at Meadow Gold during the time of the alleged bribery.

At the time of the trial, Averett testified in open court, out of the presence of the jury, stating his intention to claim the privilege of the Fifth Amendment with regard to all matters upon which he had testified at the preliminary examination. He then refused to answer the specific questions from the preliminary examination as propounded to him by counsel. The trial court thereupon permitted portions of the previous testimony to be read to the jury. The state has conceded that under LaPena v. State, 96 Nev. 43, 604 P.2d 811 (1980), it was error for the district court to admit such testimony. The state argues, however, that *LaPena* should be overruled, or, alternatively, that Averett's testimony did not incriminate the appellants. We are not persuaded by either of these contentions.

In *LaPena* we held that it was error for the district court to admit preliminary hearing testimony under the general evidence code provisions governing admission of prior testimony, NRS 51.325, and unavailability, NRS 51.055(1)(b), rather than abiding by the specific requirement of NRS 171.198(7) governing admission of preliminary hearing testimony as substantive evidence in a criminal trial. This ruling was entirely consistent with our analysis in Barker v. State, 95 Nev. 309, 314, 594 P.2d 719, 722 (1979), and Drummond v. State, 86 Nev. 4, 7, 462 P.2d 1012, 1014 (1970).[3]

 ██ █

The state suggests that since the evidence code was enacted after the specific provision related to preliminary hearing testimony, we should consider that as a matter of statutory construction the evidence code should prevail. This argument, of

---

[3]The state was therefore ill-advised to rely upon the dictum in Sparkman v. State, 95 Nev. 76, 81, 590 P.2d 151, 155 (1979), which contained no reference to NRS 171.198(7).

course, ignores the basic tenet that "the special statute, to the extent of any necessary repugnancy, will prevail over the general one." Ronnow v. City of Las Vegas, 57 Nev. 332, 365, 65 P.2d 133, 146 (1937). Furthermore, "[w]here express terms of repeal are not used, the presumption is always against an intention to repeal an earlier statute, unless there is such inconsistency or repugnancy between the statutes as to preclude the presumption, or the later statute revises the whole subject-matter of the former." Id., 65 P.2d at 145.

Since we perceive no basis for finding an intent to repeal NRS 171.198(7), we will continue to give effect to the more stringent requirements for unavailability which the legislature has imposed for use of preliminary hearing testimony.

The state also contends that appellants were not prejudiced by the use of Averett's testimony. Given the diligence with which the District Attorney pursued the task of having the evidence admitted, this argument is not persuasive.

Averett testified at the preliminary examination that he was aware that Vernon was soliciting the business of Sid Doan for Meadow Gold, and that he had at one time talked to Mr. Doan, under the impression that Meadow Gold "had the milk business." Averett specifically denied telling Vernon that he should no longer solicit Doan's business because Doan had asked for a loan. He also specifically denied that he ever called Vernon at home and told him to stop soliciting Doan's business at the truck stop on behalf of Meadow Gold. These denials directly tended to contradict grand jury testimony by Vernon, offered in evidence by the state, in which Vernon claimed that Averett had told him to stop soliciting Doan's business and pulled him off the account. Such testimony was given in response to questions about Vernon's contacts with Doan after learning that Doan had given the business to another dairy. It was, therefore, relevant to the state's entire theory of the activities, and motives, of Vernon and Lemberes. We are unable to conclude that the admission of this testimony could have been harmless beyond a reasonable doubt. See Drummond v. State, supra at 8-9, 462 P.2d at 1014-15.

The convictions are therefore reversed, and the case is remanded for further proceedings in accordance with this opinion.

GUNDERSON, C. J., and SPRINGER and MOWBRAY, JJ., concur.

MANOUKIAN, J., concurring in part and dissenting in part:

I agree with that part of the majority opinion which holds

that the proceedings did not violate defendants' right to due process of law and that there was no error in the trial court's refusal to dismiss the perjury count. However, I am unable to subscribe to the majority's conclusion that La Pena v. State, 96 Nev. 43, 604 P.2d 811 (1980), mandates reversal. Accordingly, I dissent. In light of the substantial evidence of guilt independent of Averett's preliminary hearing testimony, the error in admitting his testimony at trial can fairly be characterized as harmless beyond a reasonable doubt. Drummond v. State, 86 Nev. 4, 462 P.2d 1012 (1970).

I would affirm the convictions.